STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. WILLIAM D. REED, DEFEND-ANT-RESPONDENT AND CROSS-APPELLANT.

Argued March 6, 1961—Decided May 8, 1961.

*Mr. Melvin P. Antell,* Special Legal Assistant Prosecutor, argued the cause for the plaintiff-appellant and cross-respondent (*Mr. Brendan T. Byrne,* County Prosecutor of Essex County, attorney; *Mr. Melvin P. Antell,* of counsel and on the brief).

*Mr. Sheldon A. Weiss* argued the cause for the defendant-respondent and cross-appellant.

The opinion of the court was delivered by

PROCTOR, J. The State appeals from a judgment of the Appellate Division reversing defendant's conviction of unlawful possession of marijuana, in violation of the Uniform Narcotic Drug Law. *R. S.* 24:18–1 *et seq.* (hereinafter called the Drug Act). The defendant cross appeals from that part of the judgment which directed a remand.

Defendant allegedly rolled marijuana cigarettes at a private party. It is not clear from the evidence whether the cigarettes were intended for his own use or that of others. He was convicted under section 4 of the Drug Act (*R. S.* 24:18–4), which prohibits the unauthorized possession of narcotics; and was sentenced, as a first offender, to a fine of $50 and two to three years imprisonment. The Appellate Division held that in passing *N. J. S.* 2A:170–8, which makes the unauthorized use of narcotics a disorderly persons offense, the Legislature impliedly removed from the operation of the Drug Act possession which is "solely for * * * [the possessor's] imminent use." The case was accordingly remanded to the trial court on the ground the defendant was entitled to a jury instruction that if he possessed the marijuana solely for his own imminent consumption, he was not guilty of the offense charged. 62 *N. J. Super.* 303, 322 (1960). We granted the State's petition, and the defendant's cross petition, for certification. 33 *N. J.* 334 (1960).

The State argues that section 4 of the Drug Act was intended to proscribe all unauthorized possession, including possession for personal consumption—imminent or otherwise;

and that the Legislature has never manifested an intent to restrict the scope of section 4. The defendant argues the Appellate Division correctly held that *N. J. S.* 2*A*:170–8 was intended to limit the possession proscribed by the Drug Act; but that the Appellate Division should have directed a judgment of acquittal because the evidence clearly showed he possessed the marijuana for his own imminent use.

We first consider whether, as argued by the State, unauthorized possession for personal consumption—imminent or otherwise—was originally intended to be a violation of the Drug Act. That statute was promulgated by the Commissioners on Uniform State Laws and was adopted by New Jersey in 1933. *L.* 1933, *c.* 186. Section 4 (section 2 of the Uniform Act) provides:

"It shall be unlawful for any person to manufacture, *possess*, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized by this chapter." (Emphasis added) *R. S.* 24:18–4.

Drug addiction or use has never been a violation of this or any other section of the act. Use is ordinarily preceded by the user's possession of the drug. Does it follow that such possession was also intended by the Legislature to be exempt from the penal sanctions of the Drug Act? We think not, for the following reasons:

First, had the Legislature intended to limit the possession denounced by section 4, it could readily have done so by making it a crime to possess "with intent to sell, administer, dispense, compound, etc." Instead, it employed the unqualified term "possess." "Possess," as used in criminal statutes, ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character. *State v. Labato*, 7 *N. J.* 137, 148 (1951). On its face, therefore, section 4 would seem to apply to all unauthorized persons who knowingly exercise control over narcotic drugs.

Secondly, section 4 of the Drug Act provides that "it shall be unlawful for any person to * * * possess

\* \* \* any narcotic drug, *except as authorized by this chapter."* (Emphasis added) There follows a number of sections which permit possession under certain conditions by physicians, pharmacists, and others who must handle narcotics in the regular course of business. See *R. S.* 24:18–5 to 9. Section 36 expressly permits possession for the possessor's personal consumption or use if he has obtained the drug from an authorized dispenser for medical treatment and if he keeps the unused drug in the container in which he received it. *R. S.* 24:18–36. This exception shows that the Legislature considered the problem of possession by a user. And the provision in section 4 that possession is unlawful except as authorized elsewhere in the statute, together with section 36, shows that the Legislature intended possession for personal consumption unrelated to medical treatment to be a violation of the act. In addition, the enumeration of express exceptions to the operation of section 4 indicates a legislative awareness that the broad sweep of the language in that section would proscribe possession by *bona fide* patients, physicians, pharmacists, public officials, etc. It is unlikely the Legislature realized that the ordinary meaning of the statutory language extended to such persons, but was unaware that it also extended to those who possess narcotics for personal consumption unrelated to medical treatment. Under these circumstances, we find particularly applicable the general rule of construction that enumerated exceptions in a statute indicate a legislative intent that the statute be applied to all cases not specifically excepted. See *e. g. Armburg v. Boston & M. R. R.,* 276 *Mass.* 418, 177 *N. E.* 665, 80 *A. L. R.* 1408 *(Sup. Jud. Ct.* 1931), affirmed 285 *U. S.* 234, 52 *S. Ct.* 336, 76 *L. Ed.* 729 (1932) ; *State v. Richards,* 157 *Tex.* 166, 301 *S. W. 2d* 597 *(Sup. Ct.* 1957). Applying that rule of construction here, the express exemption of possession by patients, physicians, etc., from the operation of section 4 is an indication that possession by all other persons was to be included.

Thirdly, the inclusion of unauthorized possession for personal consumption within the proscriptions of the Drug Act seems necessary to fulfill the legislative goal of suppressing illegal narcotics traffic. Every possessor of narcotics has the power to dispense them to another. That power in the hands of any person is a potential source of illegal traffic. The Legislature recognized this by including in the Drug Act detailed provisions which regulate the conduct of those persons authorized to possess drugs. R. S. 24:18–11 to 36. The possessor-user is not subject to these regulatory provisions. Therefore, his power to dispense, necessarily accompanying his possession, is a dangerous source for the spread of narcotics addiction and its attendant evils. In addition, exclusion of possession for personal consumption from the proscriptions of section 4 would tend to inhibit effective enforcement of the act against illegal distribution by non-users. Possession was undoubtedly made a violation to eliminate the burden of proving the additional elements essential to a conviction of the other offenses—manufacturing, selling, dispensing, administering, or compounding narcotic drugs. To make the existence of the offense of possession depend upon whether the possession is for personal consumption or for distribution would be to increase rather than reduce the enforcement problems faced by the State. Where, for example, the amount possessed is small, it would ordinarily be most difficult to prove that the possession was not for personal consumption.

Finally, other jurisdictions have recognized that section 2 of the Uniform Act (which is the same as our section 4) proscribes all unauthorized possession, including that for the possessor's own use. E. g., Peachie v. State, 203 Md. 239, 100 A. 2d 1 (Ct. App. 1953); State v. Martin, 193 La. 1036, 192 So. 694 (Sup. Ct. 1939); Tomlin v. State, 338 S. W. 2d 735 (Tex. Cr. App. 1960); Comment, "Narcotics Regulation," 62 Yale L. J. 751, 779 and nn. 171, 172 (1953). But see Commonwealth v. Warner, 87 Pa. Dist. & Co. R. 91 (Ct. Quar. Sess. 1954) (interpreting a statute similar to

the Uniform Act). And the federal courts have similarly interpreted an analogous provision of the Narcotics Drugs Import and Export Act. 21 *U. S. C. A.* § 174. *United States v. Garnes,* 258 *F.* 2d 530, 533 (2 *Cir.* 1958), *cert.* denied, 359 *U. S.* 937, 79 *S. Ct.* 651, 3 *L. Ed.* 2d 637 (1959) ; *Tanzer v. United States,* 278 *F.* 2d 137, 140 *n.* 8 (9 *Cir.* 1960).

■ For the foregoing reasons, we conclude that when our Legislature adopted the Drug Act, it intended the possession proscribed in section 4 to include unauthorized possession for personal consumption—imminent or otherwise.

We next consider what effect the Legislature intended the passage of *N. J. S.* 2*A*:170-8 (hereinafter called the Use Act) to have upon section 4 of the Drug Act. The Use Act, as amended, provides in pertinent part:

"Any person who uses or who is under the influence of any narcotic drug, as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), the uniform narcotic drug law, for a purpose other than the treatment of sickness or injury as prescribed or administered by a person duly authorized by law to treat sick and injured human beings, is a disorderly person."

■ The Appellate Division, expressly disclaiming any holding of implied repealer, said at various parts of its opinion that the intended effect of passing the Use Act was to "constrict," "eliminate," "excise," or "remove" from the scope of the Drug Act "such possession of narcotics as is either inseparable from actual use thereof by the accused, or solely of a nature necessarily incidental to imminent actual use by him." However phrased, the statutory interaction described by the court below has traditionally been known as an implied repealer. See, *e. g., Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199, 223–225 (1960). We emphasize this because, for well-established reasons relating to the separation of powers in a tripartite system of government, courts are justifiably reluctant to find that one statute impliedly repeals the whole or part of another unless there

is clear evidence that the Legislature so intended. See *Goff v. Hunt,* 6 *N. J.* 600, 606 (1951). The sources of legislative intent in this instance are two: the language and development of the Drug and Use statutes, and reports submitted to the Legislature by various governmental groups assigned the responsibility of studying and recommending changes in our narcotic laws.

We first consider the statutory development. As previously mentioned, the Drug Act was passed in 1933. *L.* 1933, *c.* 186. Sections 4 and 36 have never been amended. There have been, however, two amendments to section 47 (*N. J. S. A.* 24:18–47), which prescribes the penalties for violation of section 4. As originally enacted, section 47 provided that violations of the act were punishable as high misdemeanors, that is, with a maximum of seven years imprisonment. *L.* 1933, *c.* 186, *Art.* IV, § 12. In 1951, section 47 was amended to provide for a fine of not more than $2,000 and imprisonment for a period of two to five years for the first offense, five to ten years for the second offense, and ten to twenty years for subsequent offenses. *L.* 1951, *c.* 56. Finally, in 1952, section 47 was again amended; this time to increase the maximum penalties to fifteen years, twenty-five years and life imprisonment for first, second, and subsequent offenses respectively. *L.* 1952, *c.* 90. In addition, the probation statute (*N. J. S.* 2A:168–1 *et seq.*) was amended to prohibit the courts from suspending sentence or granting probation in any case involving violation of the Drug Act unless the defendant is a first offender. *L.* 1952, *c.* 267 (*N. J. S.* 2A:168–1).

Narcotics addiction or use, as such, was first made an offense in New Jersey in 1948, when the Legislature included "common drug addicts" in the Disorderly Persons Act. *L.* 1948, *c.* 135 (*R. S.* 2:202–3). The only official explanation for this legislative action was a statement annexed to the bill that it was "to aid in the control of common drug addicts who are a danger both to themselves and to the public." *Assembly Bill* 223, *Legislative Session* 1948. In

1951, the statute was further amended to define a common drug addict as one who "habitually uses" narcotic drugs. *L. 1951, c. 330.* In the general revision of *Title 2*, effective January 1, 1952, (*L. 1951, c. 344*), use of narcotics was treated separately from other disorderly persons offenses. The drug addiction of *R. S. 2 :202–3* was replaced by *N. J. S. 2A :170–8*, which provided:

"Any person who uses a narcotic drug, as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), the uniform narcotics drug law, for a purpose other than the treatment of sickness or injury as prescribed or administered by a person duly authorized by law to treat sick and injured human beings, is a disorderly person."

Finally, in 1957, *N. J. S. 2A :170–8* was amended to make one who is "under the influence of" a narcotic drug also a disorderly person, and to provide that:

"In a prosecution under this chapter, it shall not be necessary for the State to prove that the accused did use or was under the influence of any specific narcotic drug or drugs, but it shall be sufficient for a conviction under this chapter for the State to prove that the accused did use or was under the influence of some narcotic drug or drugs as defined in article 1 of chapter 18 of Title 24 of the Revised Statutes (Food and Drugs), by proving that the accused did manifest physical and physiological symptoms or reactions caused by the use of any narcotic drug." (*L. 1957, c. 109*)

As previously mentioned, the other source for ascertaining what effect the Legislature intended passage of the Use Act to have on the operation of the Drug Act is the reports submitted to the Legislature by various governmental groups assigned the responsibility of studying and recommending changes in our narcotics laws. (It should be noted that none of these reports expressly says the Use Act was or was not intended to remove possession for imminent personal consumption from the operation of the Drug Act. Either conclusion, therefore, to the extent it relies on these reports, must be based on inference.) The Legislature had before

it the reports of four groups: the Governor's Committee on the Sale and Use of Narcotic Drugs, which made its report in 1951; the Supreme Court Committee on the Incarceration and Treatment of Narcotic Violators, which also made its report in 1951; the Legislative Commission to Study Narcotics, which made its report in 1952; and the New Jersey Commission on Narcotic Control, which has made reports each year since 1955.

The defendant argues that the development of the Drug and Use statutes, as described above, and the aforementioned reports show a legislative intent to repeal from section 4 of the Drug Act at least that possession which is for the possessor's imminent consumption. He arrives at this conclusion by the following reasoning: By providing increasingly severe penalties for violation of the Drug Act and a relatively mild penalty for violation of the Use Act, the Legislature demonstrated its intention to differentiate between traffickers and users. The reports of our narcotic study groups show this distinction is rooted in a recognition that the user is primarily a subject for medical rehabilitation. A user ordinarily has possession of the drug before self-administration. To subject him to prosecution under the Drug Act because of this possession would be to contravene the legislative policy of distinguishing traffickers from users, and of providing for the rehabilitation of the latter.

We note at the outset that rehabilitation of a user may be accomplished under the Drug as well as under the Use Act. Under both statutes, the accused is first convicted as a narcotics offender. Rehabilitation in this context therefore must refer to how the offender is handled after conviction. Incarceration in the county jail is no more calculated to accomplish his cure than incarceration in the state prison. What is required for successful medical rehabilitation is transfer to a custodial treatment facility for initial cure, and control of the offender on an out-patient basis for a substantial period thereafter. See *Report, Supreme Court Committee on the Incarceration and Treatment of*

*Narcotic Violators* (Sept. 10, 1951); *Report, Legislative Commission to Study Narcotics, p.* 37 (March 22, 1952). If such a facility were available, this could be accomplished under the Drug Act. Indeed, it is arguable that it could be better accomplished under the Drug than the Use Act; for our narcotics study groups have emphasized that control of the user for a period of five years is essential to his effective cure. *Report, Supreme Court Committee on the Incarceration and Treatment of Narcotic Violators, op. cit. supra, p.* 6; *Report, Legislative Commission to Study Narcotics, op. cit. supra, pp.* 23–24; *Second Report, New Jersey Commission on Narcotic Control, pp.* 41–42 (March 1, 1956); and see *Anslinger & Tompkins, The Traffic in Narcotics, p.* 297 (1953). And a user convicted as a disorderly person under the Use Act cannot be incarcerated or placed on probation for more than one year. *N. J. S.* 2A:169–4 and 6.

Emphasis on rehabilitation of the user therefore supports defendant's argument only to the extent that it shows the Legislature regarded the user primarily as a sick, rather than evil, offender—as the victim rather than the villain in the narcotics tragedy. Thus viewed, defendant's argument may be restated as follows: If the Legislature regarded the offense of the user as less heinous than that of the seller, and the user was thought of as a sick man, then it makes no sense to impose the penalties intended for the seller upon a particular user simply because the latter possesses the cause of his sickness. The answer is that such a disposition does make sense if it is necessary to fulfill the purpose of the Drug Act. As previously indicated, we think it is.

 There is no question that the primary purpose of passing the Drug Act was to suppress illegal narcotics traffic. The statute was passed as an all-out offensive to combat the drug evil by eliminating sources of supply. Every step in the scheme of illegal distribution was made a violation of section 4. The only act proscribed by that

section which is not by its nature confined to distribution is possession (and "have under his control" which we regard as covering constructive possession). As previously mentioned, if the Legislature intended the Act to encompass only possession with intent to sell, it could easily have said so. Why then was the unqualified term "possess" used? Undoubtedly, to facilitate enforcement. It is well known that it is extremely difficult to apprehend and convict drug traffickers. Illegal transfers do not take place under the eyes of the police. They are clandestine operations carefully guarded from official scrutiny. The proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer. If possession is interpreted not to include possession for imminent personal use, the purpose of facilitating enforcement against traffickers would be seriously hindered. Compare remarks of Judge Clark in *United States v. Garnes, supra,* at *258 F. 2d,* at *p.* 533, where he rejected defendant's argument that Congress had impliedly removed possession for personal use from that possession which is a *prima facie* violation of 21 *U. S. C.* § 174, and which places on the defendant the burden of explaining the possession to the satisfaction of the jury: "Congress's purpose * * * [was] not to increase the prosecution's burden of proving a violation." And see Comment, "Narcotics Regulation," 62 *Yale L. J.* 751, 778 (1953), where Congressman Boggs, who sponsored legislation increasing the penalties for violation of § 174, is cited as justifying a conviction thereunder based on possession for any purpose, and thus the conviction of addicts, on the ground that it is impossible to enforce narcotics laws effectively if a legislative distinction is drawn between possession by addicts and possession by peddlers.

In addition, exemption of the user-possessor from prosecution under the Drug Act would, by affirmatively sanctioning potential sources of supply, contravene the legislative policy of eradicating illegal traffic. As previously mentioned, every unregulated possessor has the power to dispense the drugs

to another. He is a source for the spread of narcotics addiction and all of the social evils which accompany it. It is well known that addicts often make drugs available to persons who have not previously used them. "[T]he addict infects by introducing others to drugs, thus spreading the disease. Experts assert that one ' addict infects four and those four infect sixteen, a progression of grave concern to any community." *Report, New Jersey Legislative Commission to Study Narcotics, p.* 26 (March 22, 1952). It is clear from a reading of the opinion below that the Appellate Division thought it unlikely the Legislature intended to permit the existence of a situation so conducive to illegal narcotics traffic. For the Appellate Division held that only possession for the possessor's *imminent,* as distinguished from *remote,* use was removed from operation of the Drug Act. The distinction was based upon the aforementioned danger inherent in unregulated possession by the user. As expressed by the court below, "possession of narcotics by any unauthorized person is always a potential fulcrum for illegal sale, distribution or use." 62 *N. J. Super.,* at *p.* 323. We fail to see how limitation of the exemption to imminent, as opposed to remote, use neutralizes the danger which prompted the distinction. How could enforcement agencies, the courts, or juries tell whether prospective use by a possessor was imminent? The word imports a time element. Presumably, therefore, whether use is imminent will depend upon the duration of possession which, on the facts of a given case, would necessarily precede administration of the drug. Suppose a possessor who asserts that he intended to return to his apartment and consume the drug is apprehended in the hallway outside of his apartment, or in the basement of the building, or a block away, or in another part of the city. Suppose he is apprehended at his place of work at the beginning of his work day, or at noontime, or at 3:00 o'clock. In which of the foregoing hypothesized cases is the asserted prospective use imminent and in which is it not? Imminence may also be a corollary of the quantity of drugs

possessed. Then, presumably, possession of a small amount, together with the foregoing factors, would give rise to an inference that use was imminent. But illegal drugs are ordinarily not carried in large quantities. And an informed seller would be foolish not to carry small amounts so that if apprehended, he could persuasively assert that the drug was intended for his own imminent consumption. We share the fear which prompted the Appellate Division's distinction between imminent and remote personal use. But we believe the impracticability of the distinction supports the view that the Legislature did not, by passing the Use Act, intend to limit the scope of possession violative of the Drug Act.

The preceding conclusion is supported by the additional consideration that to immunize persons who possess for personal consumption from prosecution under the Drug Act would apparently create a *hiatus* in narcotics law enforcement. The Use Act does not prohibit possession with intent to use. It proscribes only the actual use, or being under the influence, of a narcotic. (The two phrases are apparently synonymous since "being under the influence of" was added merely to cover an offender who has used or consumed the drug in another jurisdiction. *Third Report, New Jersey Commission on Narcotics Control, p.* 52 (March 15, 1957).) Therefore, if possession for personal consumption is not a violation of the Drug Act, it is not an offense at all. In view of the comprehensively-implemented legislative policy to outlaw every aspect of unregulated narcotic activity, it is unlikely such a result was intended. It is more likely that when the Legislature passed the various amendments to the Use statute, it did not include possession with intent to use because it understood such possession to be a violation of section 4 of the Drug Act. This conclusion is confirmed by an examination of the language of the Use Act in its various amended forms.

Although the Legislature has devoted its attention on four different occasions to the Use Act, it has never included therein or in the Drug Act a provision expressly

removing possession for the possessor's use from the operation of the latter statute. In particular, it has never amended section 36 so as to extend the exemption of possession for personal consumption to consumption unrelated to medical treatment. Of course, the absence of an express repeal does not negative the existence of an implied repeal. If it did, there would be no such thing as an implied repeal. But when it is clear from a reading of the allegedly repealing statute that the Legislature in connection therewith considered the prior statute, the absence of an express repeal is significant. It is clear that when the Legislature amended the Use Act in 1951, 1952, and 1957, it considered the interrelationship between the Drug and Use statutes. First, the Legislature has always included in the Use statute an express exception for use by a *bona fide* patient pursuant to a physician's instructions, an exception corresponding to the exception in section 36 of the Drug Act of possession for consumption by a patient. Second, in 1951 and 1952, the Legislature expressly referred to the Drug Act for a definition of the drugs the consumption of which constituted a violation of the Use Act. And third, in 1957, the Legislature specifically exempted the State in a prosecution under the Use Act from the burden of proving, as required by the Drug Act, what narcotic drug was involved in the offense charged. *L.* 1957, *c.* 109. The amendment of 1957 is particularly significant because it occurred at about the same time the Legislature amended the Drug Act to provide for exceptions to its operation. *L.* 1957, *c.* 134. Since the Legislature specifically addressed itself to restricting coverage of the Drug Act at approximately the time it amended the Use Act, the failure expressly to exclude possession for personal use from the operation of the Drug Act would seem intentional rather than the result of oversight.

That the Legislature has never intended to repeal that part of the Drug Act which proscribes possession for personal consumption is confirmed by the previously-mentioned reports of narcotic studies which were submitted to the Legislature.

The report of the Supreme Court Committee, for example, approved and adopted by the Legislative Commission to Study Narcotics, demonstrates an awareness that non-selling, user-possessors are subject to prosecution under the Drug Act, and an intention that they remain so. In its report, the Committee noted that the vast majority of narcotics offenders in our custodial institutions were non-selling addicts, some of whom were good treatment risks. Accordingly, the Committee recommended the establishment of a custodial rehabilitation facility. To accomplish its purpose, the Committee proposed an amendment to section 47 of the Drug Act, permitting violators to be placed on probation. *Report, Supreme Court Committee on the Incarceration and Treatment of Narcotic Violators, op. cit., supra, p. 5.* The proposed amendment indicates that the offenders to be treated were imprisoned for violation of the Drug Act. Since they were non-selling addicts, it is reasonable to assume they were convicted of possession despite the fact the drugs were intended for their personal use. The significant fact here is that the Committee did not recommend that possession for personal use be removed from the Drug Act. That this has continued to be the attitude of the groups responsible for study of our narcotics laws and of the Legislature is clear from the reports of the New Jersey Commission on Narcotics Control. In its second report, at *pp.* 25–26, the Commission recommended:

"(A) an increase in the minimum and maximum penalties for first and subsequent offenses for the illegal sale, dispensation, or manufacture of narcotic or addiction producing drugs."

(and)

"(B) The prohibition of suspended sentences on charges involving the illegal sale, dispensation, manufacture of narcotic or addiction-producing drugs."

It should be noted that the increased penalties were not to apply to those convicted of possession. Pursuant to this recommendation, in 1956, a bill amending section 47 of the

Drug Act and providing for enhanced mandatory sentences for manufacture and sale was introduced before the Legislature. *Assembly Bill* 488, 1956 *Legislative Session.* The proposed amendment was passed by both the Senate and Assembly, but was conditionally vetoed by the Governor, because of objection to the mandatory feature of the increased sentences. *Third Report, New Jersey Commission on Narcotics Control, p.* 43 *(March* 15, 1957). The fact here significant is that the Legislature approved the increased sentences for manufacture and sale and the retention of possession as a violation of the Drug Act. The Commission explained the purpose of the proposed amendment as follows:

"The purpose of this amendment was to separate the offense for the illegal sale or manufacture of narcotic drugs *from the offense of illegal possession* ＊ ＊ ＊." (Emphasis supplied) *Id.,* at *p.* 41.

If possession were intended to cover only possession with intent to sell, there would have been no reason to exempt the possessor from the increased penalties of the proposed amendment. Certainly the person who possesses with the intent to sell is as culpable an offender as the one who has completed a sale. Possession must therefore have been retained under the proposed amendment as a distinct violation of the Drug Act, not subject to the increased penalties, because it was intended to encompass possession by the non-seller.

For all the foregoing reasons, we conclude that passage of the Use Act did not remove from the penal sanctions of the Drug Act possession for the possessor's personal consumption—imminent or otherwise.

The defendant argues that if possession for imminent personal consumption remains a violation of the Drug Act, then the Act is to that extent unconstitutional as a denial of equal protection of the law. For authority he cites *Olsen v. Delmore,* 48 *Wash.* 2d 545, 295 *P.* 2d 324 *(Sup. Ct.* 1956) and *State v. Pirkey,* 203 *Or.* 697, 281 *P.* 2d 698

*(Sup. Ct.* 1955). This is merely a restatement in constitutional terms of defendant's argument for repeal; for if the Legislature has reasonable grounds for distinguishing between a user who possesses for personal consumption and one who does not possess, then there is no denial of equal protection. See *Washington National Ins. Co. v. Board of Review,* 1 *N. J.* 545, 552 (1949). The reasons previously advanced in support of our conclusion that there has been no repeal show that possession of the drug is, in the context of narcotics law enforcement, a reasonable standard for distinguishing some users from others. The cases cited by defendant are distinguishable from the one before us. In both *Olsen* and *Pirkey* the Washington and Oregon Supreme Courts, respectively, held unconstitutional a statute which made the same identical act committed under the same circumstances a felony or a misdemeanor. The elements of proof essential to either conviction were the same and therefore there was no legislative standard for determining what offenders could be charged with a felony. In the present case, the Legislature has prescribed a standard possession.

Defendant also argues that if possession for the possessor's imminent consumption remains a violation of the Drug Act, there is reposed in the prosecutor, when an accused is apprehended in possession and under the influence of narcotics, an unconstitutionally broad discretion to proceed under either the Drug or Use statute. The specific constitutional question here raised was dealt with and rejected by the court in *United States v. Garnes, supra.* There, the defendant was convicted on two counts for violating 21 *U. S. C.* § 174 and 26 *U. S. C.* § 4724 (c). 21 *U. S. C.* § 174 prohibits the receipt or concealment of a narcotic drug, knowing it to have been imported into the United States contrary to law, and provides that if the defendant is shown to have had possession of the narcotic drug, such possession will be sufficient to sustain conviction unless he explains the possession to the satisfaction of the jury. 26 *U. S. C.* § 4724 (c) makes it unlawful for any person, who has not registered

as a dispenser of medicinal narcotics and paid a drug tax, to possess narcotics. § 4724 (c) also makes possession as such presumptive evidence of a violation. In 1956, Congress severely increased the penalties for violation of § 174 and less significantly increased the penalties for violation of § 4724 (c). The defendant argued, similarly to the defendant in the present case, that the Congressional action, considered in light of the legislative history, showed an intent to make only possession for sale, rather than personal use, a *prima facie* violation of § 174. The court held that, in view of the plain meaning of the language employed and a Congressional purpose to tighten the restrictions of existing law, possession for personal consumption remained a *prima facie* violation of both statutes. The defendant argued that such a construction lodged in the prosecutor an unconstitutionally broad discretion to proceed under § 174 or § 4724 (c). In response, the court noted that although the government's initial burden of proof was the same under both statutes (it need only prove the defendant's possession of contraband narcotics), the proof sufficient to rebut the presumption raised by possession in one statute was different from that required to rebut the presumption in the other. Accordingly, it was held that §§ 174 and 4724 (c) defined two distinct crimes and that the prosecutor's discretion to proceed under either or both statutes was constitutionally valid.

In the present case, the Drug and Use statutes also define two distinct offenses. Under the Drug Act, the State must prove that the accused had actual or constructive possession of a narcotic drug. (We note that the containment of a consumed narcotic within a person's blood or respiratory system is not constructive possession.) And under the Use Act, it is sufficient to prove that the accused used or was under the influence of a narcotic. Since the Drug and Use statutes define two distinct offenses, the fact that an accused who possessed and also used or was under the influence of a narcotic could be prosecuted for either offense

or both does not alone affect the constitutional validity of the Drug or the Use statute. In such a situation, the decision to proceed under either or both of the statutes is traditionally the State's. *United States v. Garnes, supra; Clemons v. United States,* 137 *F. 2d* 302 (4 *Cir.* 1943); *cf. Berra v. United States,* 351 *U. S.* 131, 76 *S. Ct.* 685, 100 *L. Ed.* 1013 (1956). (We note that the wise exercise of such discretion could achieve optimum reconciliation of the policies underlying the Drug and Use statutes. When a person under the influence of narcotics is apprehended in possession of a drug, the prosecutor might attempt, insofar as possible, to ascertain whether the offender is merely a user and, if thoroughly convinced that he is, proceed under the Use statute. Such an administrative distinction might be made without impairing enforcement of the Drug Act and at the same time achieve conviction of the "pure user" under the Use Act.)

We hold that section 4 of the Drug Act proscribes the unauthorized possession of narcotics for any purpose—including possession for the possessor's imminent consumption, and that the scope of that proscription was unaffected by passage of the Use Act. The defendant's cross appeal is therefore moot. The judgment below is accordingly reversed and the trial court's judgment of conviction is reinstated.

No. A-97:

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.

No. A-98:

*For dismissal as moot*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.