## Commonwealth v. Gilbert

*Allen E. Ertel,* District Attorney, for Commonwealth.
*John A. Felix,* Public Defender, for defendant.

GREEVY, P. J., September 8, 1972.—This case involves the interpretation of the word "possession" as used in the Pennsylvania Drug, Device and Cosmetic Act of September 26, 1961, P. L. 1664, sec. 4(q), (35 PS §780-4(q).). This subsection makes unlawful:

"(q) The possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in, or giving of, any dangerous or narcotic drug."

James Wayne Gilbert, defendant, was indicted on February 17, 1972, on the charge that he "Did unlawfully possess and control dangerous drugs, to wit: methaqualone and propoxyphene."

The material facts presented by the Commonwealth at trial are these: Defendant was admitted to the Williamsport Hospital following an automobile accident and samples of his blood were taken by hospital personnel for medical purposes. The samples revealed the presence of two dangerous drugs. No drugs were found on defendant's person. The defense offered no evidence.

Following his conviction by a jury, defendant filed motions for a new trial and in arrest of judgment. It is the latter motion with which we shall deal for it is dispositive of the case.

## DISCUSSION

The Act of June 15, 1951, P. L. 585, sec. 1, 19 PS §871, provides for a motion in arrest of judgment on the ground that the evidence at trial was insufficient to sustain a conviction.

Stated succinctly, the question which we must decide is, whether or not the presence of a dangerous drug in a person's blood stream is sufficient to sustain a conviction for "possession" and "control" within the comprehension of the act under which defendant was charged.

Since the Act of 1961 has now been repealed as of June 13, 1972, a lengthy and detailed study of the legislative intent would yield little benefit. We note, however, that the act distinguishes between "possession" and "use." Subsection (r) of the act, 35 PS §780-4(r), provides, inter alia, that the "Using, taking, administering to the person or causing to be administered to the person . . . (of) any narcotic drug . . ." is an offense.

The legislature in providing for "possession" in subsection (q) and "use" in subsection (r) made a distinction between the two. What is even more critical here, however, is that the use of only narcotic drugs was prohibited and no provision was made covering the use of dangerous drugs.

From the language of sections (q) and (r), it appears clear that a person, under the facts that were presented in this case, was "using, taking (or) administering to the person" a dangerous drug rather than "possessing and controlling it." There is no section under the Act of 1961 covering and prohibiting the use of dangerous drugs.

Our Pennsylvania cases point out that the word "possession" has a common meaning, so we must consider what the dictionary definitions of "possession," "control" and "use" are. Our definitions are taken from Webster's Third New International Dictionary (unabridged), 1961.

"Possession" is defined, inter alia, as "The act or condition of having in or taking into one's control or holding at one's disposal."

"Control" involves, inter alia, the "Power or authority to guide or manage: directing or restraining domination."

"Use" means, inter alia, "To put into action or serve."

Although our Pennsylvania cases point out that "possession" has no precise legal meaning, it is fairly evident that "possession" requires the ability to "control" what is possessed. In the area of drugs the Superior Court held, in Commonwealth v. Yaple, 217 Pa. Superior Ct. 232 (1970), that possession involves the power of control and the intent to control. Here, the power to control was missing.

The trial judge in charging the jury stated:

"The defendant is charged with the illegal possession and control of dangerous drugs.

"Criminal possession requires that you have knowledge that you have something that is illegal, that you have dominion over it, and the absolute power to control it and dispose of it. Merely having something does not constitute criminal possession unless you have the absolute ability or right to manage it.

"When we consider the word 'control', we must also think of the concept of having the power, right, and ability to guide or manage something—to decide its existence, location, quantity, quality, and so on. One who has control of a thing can dominate it, influence it, restrain it, regulate it, or direct it. Without the right or power to control them one cannot be in possession of drugs, under this statute.

"One more word requires consideration. That is 'use'. One who uses something puts it into service for his benefit or employs it or exploits it to his advantage. 'Use' also means 'to partake of something' when referring to things which can be ingested. This defendant is not charged with use of these drugs."

The Commonwealth argues that "the defendant was in continuous possession or constructive possession of the drugs." This case is one of first impression in the Commonwealth and we have found only one case in another jurisdiction where a similar problem was discussed. In State v. Reed, 34 N.J. 554, 170 A. 2d 419 (1961), the court noted:

"The containment of a consumed narcotic within a person's blood or respiratory system is not constructive possession."

We find that under the law it was not "possession" or "constructive possession" within the contemplation of the 1961 Act for defendant to have dangerous drugs in his blood stream. Defendant had no ability to con-

trol the dangerous drugs in his blood stream, he had no dominion over them nor could he guide or restrain them.

We make the following

## ORDER

And now, September 8, 1972, defendant's motion for arrest of judgment is granted and defendant is discharged.