John **KEELEY, Timmie Orange, Ariel Kilpatrick and Charles Werdann, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**LOOMIS FARGO & CO., Defendant.**

No. Civ. 97–6207(DRD).

United States District Court, D. New Jersey.

Oct. 15, 1998.

Paul Schachter, Mary P. Gallagher, Reinhardt & Schachter, P.C., Newark, New Jersey, for plaintiffs.

Patricia L. Hardaway, Gay & Hardaway, New York City, Robert L. Thompson, David M. Vaughan, Richard M. Escoffery, Elarbee, Thompson & Trapnell, Atlanta, Georgia, for defendant.

## OPINION

DEBEVOISE, Senior District Judge.

In this action for overtime pay the plaintiffs and defendant, Loomis Fargo & Co. ("Loomis Fargo"), cross-move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Loomis Fargo's motion will be granted and the plaintiffs' motion will be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs are four New Jersey residents presently or formerly employed by Loomis Fargo or its predecessor, Wells Fargo Armored Services Corp. ("Wells Fargo") at its Lyndhurst, New Jersey facility. The plaintiffs are and have been employed by Loomis Fargo in various positions, including guard, driver-guard, messenger-guard and ATM technician. Since April 1997 plaintiff Keeley has worked full-time for the United Armed Guards of America union (the "Union").

Loomis Fargo is a trucking industry employer subject to the jurisdiction of the United States Secretary of Transportation pursuant to the Motor Carrier Act, 49 U.S.C. § 31501 *et seq.*, and is thereby exempt from the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 213(b)(1). The State of New Jersey has

its own minimum wage and overtime statute, N.J.S.A. 34:11–56a4, which establishes a minimum wage rate of $5.05 per hour and requires payment of wages at one and one-half times an "employee's regular hourly wage for each hour of working time in excess of 40 hours in any week."

In July 1996 the New Jersey Department of Labor promulgated N.J.A.C. 12:56–19.1 to 19.3, which became effective on August 5, 1996. Loomis Fargo falls within the definition of a "trucking industry employer" set forth in N.J.A.C. 12:56–19.1. The regulation provides that trucking industry employees will be paid the New Jersey minimum wage. N.J.A.C. 12:56–19.2. It also provides for payment of overtime at a rate not less than one and one-half times the New Jersey minimum wage. N.J.A.C. 12:56–19.3.[1]

In the course of employment by Loomis Fargo, the plaintiffs have consistently worked in excess of 40 hours per week. They have been compensated for their overtime hours at their regular hourly rate of pay pursuant to a renewal collective bargaining agreement between Wells Fargo and the Union effective November 1, 1995.[2] Plaintiff Keeley was the Union's chief negotiator and the plaintiffs' counsel in this action represented the Union during contract negotiations with Wells Fargo. Vaughan Decl. ¶ 2.

The plaintiffs commenced this lawsuit in the Superior Court of New Jersey, Law Division, Union County on November 13, 1997, to i) recover for themselves and for the class of similarly situated employees payment for their overtime labor at the rate required by the New Jersey Wage and Hour Law and ii) obtain injunctive relief mandating future compliance with the law. The plaintiffs seek certification of a class consisting of all persons employed by Loomis Fargo as guards, driver-guards, messenger-guards and ATM technicians who have earned but have not received overtime pay at the rate prescribed by New Jersey law. Loomis Fargo removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of the complete diversity of the parties.[3] Loomis Fargo's December 19, 1997 Answer to the Complaint alleged, *inter alia*, that the plaintiffs' claims were preempted by federal law.

By order dated February 25, 1998 Magistrate Judge Ronald J. Hedges directed Loomis Fargo to file a motion to dismiss based on its preemption defense. Certification of the plaintiff class and discovery by the parties were stayed pending the outcome of the motion. On June 12, 1998 this Court denied Loomis Fargo's motion, finding that New Jersey's overtime law was not preempted by the FLSA. *Keeley v. Loomis Fargo & Co.*, 11 F.Supp.2d 517 (D.N.J.1998).

In their brief opposing Loomis Fargo's motion to dismiss, the plaintiffs had argued that New Jersey's overtime law should require overtime compensation to trucking industry employees based not on the state minimum wage as required by N.J.A.C. 12:56–19.3 but based instead on their regular hourly rate. However, their argument for striking down this regulation went beyond the scope of Loomis Fargo's motion to dismiss on preemption grounds and was not addressed at that time. *Id.* at 519 n. 2.

---

**1.** Because New Jersey's minimum wage is $5.05, under N.J.A.C. 12:56–19.3 trucking industry employees must be paid $7.575 per overtime hour worked.

**2.** The collective bargaining agreement provides in relevant part: "Except for vault personnel, there will be no premium pay for hours worked over forty (40) in a workweek, and all such hours will be paid at the employee's straight-time rate. If the federal law is subsequently changed or a state law enacted to affect the overtime premium, the Company will fully abide by that change in the law." Vaughan Decl.Ex. 1 at 23.

**3.** Loomis Fargo is a Delaware corporation and maintains its principal place of business in Houston, Texas.

Magistrate Judge Hedges ordered the parties to cross-move for summary judgment concerning the validity of N.J.A.C. 12:56–19.3, and these motions are now before this Court. On July 20, 1998 the parties entered into a stipulation, for purposes of these motions, that between November 1995 and November 1997[4] the wages paid by Loomis Fargo to the named plaintiffs were at an hourly rate that exceeds $7.575, one and one-half times the New Jersey minimum wage.[5]

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247–248, 106 S.Ct. 2505.

### ANALYSIS

The plaintiffs argue that N.J.A.C. 12:56–19.3 is void as an invalid exercise of regulatory authority because i) the effect of the regulation is to create a motor carrier exemption contrary to legislative intent and ii) the promulgation of the regulation was an *ultra vires* exercise of agency authority. Loomis Fargo contends that the plaintiffs have failed to satisfy their burden of proving that the regulation is invalid and that the claims against it must therefore be dismissed because its overtime payments to the plaintiffs comply with the requirements of N.J.A.C. 12:56–19.3.

The Appellate Division of the New Jersey Superior Court has recognized the heavy burden facing a party challenging the validity of an agency regulation:

An agency regulation is presumptively valid, and therefore the party challenging it bears the burden of proving its invalidity. The presumption of validity follows if the regulation is within the authority delegated to the agency and is not on its face beyond the agency's power. In considering the grant of authority, courts look to the fair contemplation of the delegation of the enabling statute. And while a regulation cannot alter the

---

**4.** Because the New Jersey Wage and Hour Law has a two-year statute of limitations, N.J.S.A. 34:11–56a25.1, the relevant time period is from November 13, 1995 through November 13, 1997, the date the complaint in this action was filed in state court.

**5.** The hourly wages were $10.80 for John Keeley; $11.05 for Timmie Orange; $8.45 for Ariel Kilpatrick; and $7.50 for Charles Werdann from July 20, 1996 to September 28, 1996 and $8.25 thereafter. Werdann was underpaid $.075 per hour for the overtime hours he worked from the effective date of N.J.A.C. 12:56–19.3 to September 28, 1996 and Loomis Fargo has since sent a check to Werdann for the amount he was underpaid.

terms of a statute or frustrate the legislative policy, courts place great weight on the interpretation of legislation by the administrative agency enforcing it. *E.I. du Pont de Nemours and Co. v. State, Dept. of Environmental Protection and Energy,* 283 N.J.Super. 331, 339–340, 661 A.2d 1314 (1995) (citations and internal quotation marks omitted). As a result, N.J.A.C. 12:56–19.3 is presumptively valid if it "is within the authority delegated to the agency and is not on its face beyond the agency's power." *Id.* at 339, 661 A.2d 1314. The enabling statute and regulatory history must be reviewed in order to determine if the Department of Labor's promulgation of N.J.A.C. 12:56–19.3 was an invalid exercise of agency authority.

N.J.S.A. 34:1A–3(e) gives the Commissioner of the New Jersey Department of Labor the authority to "[a]dopt, issue and promulgate, in the name of the department, such rules and regulations as may be authorized by law." The Commissioner is authorized to appoint a wage board if he "is of the opinion that a substantial number of employees in any occupation or occupations are receiving less than a fair wage," and the role of the wage board is "to report upon the establishment of minimum fair wage rates for employees in such occupation or occupations." N.J.S.A. 34:11–56a8. Wage boards are authorized to, *inter alia,* "recommend establishment or modification of the number of hours per week after which the overtime rate ... shall apply and may recommend the establishment or modification of said overtime rate." N.J.S.A. 34:11–56a13.

Reports containing wage board recommendations are submitted to the Commissioner, N.J.S.A. 34:11–56a14, who accepts or rejects the reports. N.J.S.A. 34:11–56a15. Those recommendations accepted by the Commissioner are then published together with other proposed administrative regulations and a public hearing is held. N.J.S.A. 34:11–56a15. If the Commissioner then approves the wage board's report, he makes a wage order, including such proposed administrative regulations as embody the recommendations of the wage board. N.J.S.A. 34:11–56a16. Regulations defining and governing overtime rates are expressly allowed. *Id.*

In the present case, the Commissioner appointed a wage board because at the time N.J.A.C. 12:56–19.1 to 19.3 were being considered, the "assumption was that overtime was not required" for trucking industry employees under New Jersey law. 28 N.J.R. 3799. However, "recent court cases [ ] raised an issue as to whether overtime was required in New Jersey" for such employees. *Id.* Based upon this uncertainty in the law, the trucking industry petitioned the Department to provide guidance as to whether employees in the industry were entitled under New Jersey law to a premium for overtime hours worked. *Id.*

Once constituted, the wage board gathered and considered relevant information on this topic. "[I]n determining the applicable fair rate of pay and reaching [a] conclusion with regard to the effect of the regulation on workers, the Board considered economic data from the region and across the country." *Id.* For instance, it "carefully considered wage survey information provided by [the] state Office of Labor Research and Analysis," and information regarding "the average wages paid in New Jersey and neighboring states and the country." *Id.* The wage board also considered the law of other states, noting that "less than five states require any kind of overtime premium for the trucking ... industry." *Id.* The board further conducted surveys, which "indicate[d] that the industry standard is not to pay overtime based on the FLSA exemption." *Id.* It also considered the fact that the assumption had been that New Jersey law, like federal law and the law of almost every other state, did not require any premium to be paid to trucking industry employees for overtime hours worked. *Id.*

The wage board proposed, in its first report, that there be no requirement that

trucking industry employees be paid any premium for overtime. *Id.* However, the Commissioner rejected that recommendation and "directed the Wage Board to consider the impact on the lowest paid workers." *Id.* The wage board reconvened and ultimately issued a second report, recommending that trucking industry employees be paid one and one-half times the New Jersey minimum wage for overtime hours worked. The Commissioner accepted the second report and published the report together with the proposed administrative regulation pursuant to N.J.S.A. 34:11–56a15. The Commissioner also scheduled and gave notice of a public hearing pursuant to that provision. The hearing was held on April 11, 1996 at the New Jersey Department of Labor in Trenton, and Christopher L. Leavey, the Assistant to the Commissioner, was present and received testimony. 28 N.J.R. 3798. After public testimony was taken and considered, the hearing officer recommended that the regulation be adopted. The Commissioner adopted the regulation, which was codified at N.J.A.C. 12:56–19.3 and became effective August 5, 1996.

## I. *Effect of the Regulation*

■ The plaintiffs' first argument, that N.J.A.C. 12:56–19.3 should be struck down because its effect is to create a motor carrier exemption contrary to legislative intent, is unpersuasive. It is true that the practical effect of N.J.A.C. 12:56–19.3 is that the plaintiffs are not entitled to any premium for overtime hours worked. However, this is because they earn more for every hour worked than they must be paid for overtime hours worked, *see* July 20, 1998 Joint Stipulation, not because trucking industry employers are exempt from New Jersey's overtime pay requirements. As discussed above, the basis for overtime pay under the regulation is the state minimum wage and not the employee's hourly rate. The Commissioner explained that N.J.A.C. 12:56–19.3 *"relaxes* New Jersey's statutorily set overtime requirements for certain employees in the trucking industry

to one and one-half times the minimum wage" and does not eliminate overtime for trucking industry employees altogether as initially proposed by the wage board. 28 N.J.R. 3800 (emphasis added).

■ Moreover, while the general rule of construction is that "enumerated exceptions in a statute indicate a legislative intent that the statute be applied to all cases not specifically excepted," *State v. Reed,* 34 N.J. 554, 558, 170 A.2d 419 (1961), this general rule does not apply here because New Jersey's Wage and Hour Law clearly authorizes the modification of overtime rates for a particular occupation by administrative regulation. N.J.S.A. 34:1A–3(e); N.J.S.A. 34:11–56a16. In light of the legislature's express authorization of the modification of overtime rates by administrative regulation, the New Jersey legislature's failure to amend the Wage and Hour Law to add a special overtime provision for trucking industry employees similar to the one it recently added for certain limousine drivers also does not support an inference that the legislature is opposed to such a provision. As the New Jersey Supreme Court has recognized, "legislative inaction has been called a weak reed upon which to lean and a poor beacon to follow in construing a statute." *Amerada Hess Corp. v. Director, Div. of Taxation,* 107 N.J. 307, 322, 526 A.2d 1029 (1987) (citation and internal quotation marks omitted), *aff'd,* 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989).

■ In addition, although they were all paid more than one and one-half times the minimum wage the plaintiffs contend that the effect of the regulation is that they are not paid a fair wage. This argument is without merit. "Fair wage" is defined under the Wage and Hour Law as "a wage fairly and reasonably commensurate with the value of the service or class of service rendered and sufficient to meet the minimum cost of living necessary for health." N.J.S.A. 34:11–56a1(k). The wage board considered a wealth of information in eval-

uating whether trucking industry employees were being paid a fair wage[6] and concluded that it was "pleased" with the wages paid to such employees. 28 N.J.R. 3799. The wage board also weighed the benefits of overtime premiums against the possibility that jobs would be lost and trip rates would decline if trucking industry employees were required to be paid overtime wages of one and one-half times their regular hourly rate, and determined that a modified overtime premium based on the minimum wage should be established.

■ Moreover, it is notable that the plaintiffs' wages were negotiated by the Union and that the chief Union negotiator, plaintiff Keeley, was advised during the 1995 negotiations by counsel for the plaintiffs in this action. Vaughan Decl. ¶ 2. Presumably, the Union would not have negotiated an agreement under which the employees were paid an unfair wage. Indeed, "a principal purpose of any collective bargaining agreement [is] the assurance of a fair wage for everyone in the work place." *In re Mile Hi Metal Sys.*, 67 B.R. 114, 118 (D.Colo.1986), *vacated on other grounds*, 899 F.2d 887 (10th Cir.1990). As a result, it cannot be said that the plaintiffs receive less than a fair wage.

## II. *Ultra Vires Exercise of Agency Authority*

The plaintiffs also argue that the promulgation of the regulation was an *ultra vires* exercise of agency authority, and they advance three reasons why the agency's actions were unauthorized: i) the wage board was convened for an improper purpose; ii) the wage board exceeded its statutory authority; and iii) the wage board acted contrary to the statutory policy.

## A. *Purpose for Convening Wage Board*

■ Under the governing law the appointment of a wage board is authorized if the Commissioner "is of the opinion that a substantial number of employees in any occupation or occupations are receiving less than a fair wage." N.J.S.A. 34:11-56a8. The plaintiffs argue that the actions of the Commissioner in this instance were not to protect employee compensation because employees were then getting less than a fair wage, but rather to give an advantage to the employers with respect to out-of-state competition by allowing them to pay wages less than otherwise provided by law.

The Commissioner, however, explained that "[t]he Wage Board was convened because the application of the overtime provision could result in the flight of business with the resulting reduction in employment in this industry. Additionally, it could result in a disruption in the 'trip rate' paid to many drivers within this industry." 28 N.J.R. 3978(c) at 3. Thus, the Commissioner was of the opinion that if the statute's overtime provision was applied to the trucking industry, employees could receive less than a fair wage in two respects: businesses might leave New Jersey, causing employees to lose their jobs altogether, and the trip rate paid to drivers could decline.

Moreover, the plaintiffs fail to present any authority to support their contention that the Commissioner should not have appointed the wage board because trucking industry *employers* brought this issue to his attention. Indeed, while the Commissioner stated that trucking industry *employers* requested that a wage board be convened, 28 N.J.R. 3799, he explained that he was also asked by the "trucking industry," presumably *employees*, to consider this issue and adopt regulations that

---

**6.** For instance, it "carefully considered wage survey information provided by [the] state office of Labor Research and Analysis," 28 N.J.R. 3799; "fully considered average wages paid in New Jersey and neighboring states and the country," *id.;* "considered economic data from the region and across the country," *id.;* and considered information obtained from the United States Department of Labor. *Id.*

would require that trucking industry employees be paid overtime:

> The trucking industry is somewhat different than other industries in that the Federal and state governments have not required overtime for employees covered by this regulation. The assumption was that overtime was not required. However, recent court cases have raised an issue as to whether overtime was required in New Jersey. *As a result of these cases, the industry petitioned the Department to adopt regulations which would require overtime for these employees.*

*Id.* (emphasis added). Therefore, it cannot be said that the Commissioner convened the wage board for the purpose of blindly doing the bidding of trucking industry employers, and this conclusion is reinforced by the fact that the Commissioner rejected the wage board's first proposal (which did not provide for any overtime premium whatsoever) and sent the board back "to consider the impact on the lowest paid workers." *Id.*

### B. *Wage Board's Statutory Authority*

■ The plaintiffs also argue that the Department of Labor exceeded its statutory authority under N.J.S.A. 34:11–56a13 to establish or modify overtime rates because the Department's power to modify "does not authorize it to define them out of existence." Pl.Br. at 19. This argument is unavailing because, as discussed above, the wage board did not carve out administratively a motor carrier exemption by promulgating the regulation; rather, it "relaxe[d] New Jersey's statutorily set overtime requirements for certain employees in the trucking industry to one and one-half times the minimum wage" after

rejecting the proposal to eliminate the overtime premium altogether. 28 N.J.R. 3800.

In addition, it should be noted that the plaintiffs' reliance on *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.,* 512 U.S. 218, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994), is misplaced because that case is distinguishable on its facts. *MCI Telecommunications* concerned regulations issued by the Federal Communications Commission ("FCC") to facilitate competition in the long distance telephone industry. The Supreme Court found that the FCC properly issued regulations relaxing some of the tariff filing requirements for non-dominant carriers (i.e., all carriers other than AT & T) but that it exceeded its statutory authority to modify tariff requirements when it issued a regulation completely eliminating those filing requirements. N.J.A.C. 12:56–19.3 is much more limited in scope than the detariffing regulation issued by the FCC in *MCI Telecommunications* because N.J.A.C. 12:56–19.3 is not a "fundamental revision of the statute," 512 U.S. at 231, 114 S.Ct. 2223, nor does it affect all New Jersey employers except one.[7]

### C. *Statutory Policy*

■ The plaintiffs argue that the wage board acted contrary to the statutory policy. They contend that in "depriving motor carrier employees of overtime compensation as enjoyed by other categories of workers, the regulation affirmatively works against the policy of protecting these workers from wage levels detrimental to their health, efficiency and well-being." Pl.Br. at 20.

---

7. Indeed, the Supreme Court itself distinguished permissible FCC modifications to the statute's tariff filing requirements from the detariffing policy at issue:

> We do not mean to suggest that the tariff-filing requirement is so inviolate that the Commission's existing modification authority does not reach it at all. Certainly the Commission can modify the form, contents,

> and location of required filings, and can defer filing or perhaps even waive it altogether in limited circumstances. But what we have here goes well beyond that. It is effectively the introduction of a whole new regime of regulation. . . .

*MCI Telecommunications,* 512 U.S. at 234, 114 S.Ct. 2223.

The thrust of the plaintiffs' argument is that "[i]f the regulation is enforced, plaintiffs ... will likely work longer hours, to the detriment of their health, efficiency and well-being." *Id.* However, as the plaintiffs acknowledge, the Federal Motor Carrier Act "regulates safety by setting maximum numbers of hours to be worked." *Id.* at 22 (quoting *Pettis Moving Co. v. Roberts,* 784 F.2d 439, 441 (2d Cir. 1986)).[8] In addition, the plaintiffs' argument ignores the fact that the enforcement of the regulation would simply continue the status quo because they are not now, and apparently never have been, paid one and one-half times their regular hourly rate for overtime. There is no indication that a continuation of the status quo would endanger the plaintiffs' health and well-being and, as discussed above, the plaintiffs are paid a fair wage.

Moreover, as the Commissioner noted, the "Wage Board recommendation is consistent with the policy of the vast majority of states," 28 N.J.R. 3799, and there is no evidence that the plaintiffs' dire predictions have occurred in any of the other states that follow this policy. Thus, it cannot be said that the wage board acted contrary to the statutory policy.

### III. Pre–Regulation Overtime Pay

■ Finally, the plaintiffs argue that even if this Court upholds the regulation they are entitled to overtime premium payments under N.J.S.A. 34:11–56a4 for the nine-month period from November 13, 1995 to August 5, 1996, the date the regulation became effective. Their argument is unavailing because Loomis Fargo has established a good faith defense to the plaintiffs' claim for pre-regulation overtime pay.[9]

■ An employer may assert a good faith defense to a claim for liability for overtime pay pursuant to N.J.S.A. 34:11–56a25.2:

[N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under this act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation by the Commissioner of the Department of Labor and Industry or the Director of the Wage and Hour Bureau, or any administrative practice or enforcement policy of such department or bureau with respect to the class of employers to which he belonged. Such a defense, if established, shall be a complete bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

"Good faith is generally defined as honesty of intention and freedom from circumstances which ought to put the holder upon inquiry." *State v. Frech Funeral Home,* 185 N.J.Super. 385, 393, 448 A.2d 1037 (1982) (*citing Siano v. Helvering,* 13 F.Supp. 776, 780 (D.N.J.1936)).

As noted by the Commissioner in his report, "the Federal and state governments ha[d] not required overtime for employees covered by this regulation. *The assumption was that overtime was not required.*" 28 N.J.R. 3799 (emphasis added). The plaintiffs and Loomis Fargo similarly operated under the assumption

---

8. N.J.A.C. 12:56–19.3 by its own terms applies only to those trucking industry employees "for whom the Secretary of Transportation may prescribe maximum hours of work for the safe operation of vehicles" pursuant to the Federal Motor Carrier Act.

9. Because the regulation will not be set aside, Loomis Fargo's contention that its good faith reliance on the validity of the regulation is also a bar to this action need not be addressed.

that New Jersey's overtime provision was preempted by federal law. The collective bargaining agreement that became effective November 1, 1995 provided that "[e]xcept for vault personnel [who are not covered by the FLSA's Motor Carrier exemption], there will be no premium pay for hours worked over forty (40) in a workweek, and all such hours will be paid at the employee's straight-time rate." Vaughan Decl.Ex. 1 at 23. The agreement further stated that "[i]f the federal law is subsequently changed or a state law enacted to affect the overtime premium, the Company will fully abide by that change in the law." *Id.*

This language demonstrates both Loomis Fargo's and the plaintiffs' good faith belief that, at the time the agreement was entered into, no overtime premium was required under either federal or state law.[10] In addition, there is no indication that any trucking industry employer in New Jersey has been required to pay its employees one and one-half times their regular hourly rate for overtime, either before or after the regulation was issued, or that before the regulation was adopted the plaintiffs demanded overtime pay from Loomis Fargo. The New Jersey Supreme Court in *Frech Funeral Home,* the only reported case discussing the good faith defense under N.J.S.A. 34:11–56a25.2, similarly based its finding that the defendant, a funeral home that did not pay its mortician trainees a premium for overtime based on its belief that they were professionals and thus exempt from the statute, acted in good faith in part on evidence that other funeral home owners did not pay their mortician trainees a premium for overtime and that the employees never

demanded it. *Frech Funeral Home,* 185 N.J.Super. at 396–397, 448 A.2d 1037

In light of the foregoing, Loomis Fargo had a good faith belief that the plaintiffs were exempt from any overtime requirements and thus it is not liable for any pre-regulation overtime payments to the plaintiffs.

## CONCLUSION

For the reasons set forth above, Loomis Fargo's motion will be granted and the plaintiffs' motion will be denied.

---

**10.** David M. Vaughan, Esq., counsel for Loomis Fargo, similarly states in his declaration:

> During the negotiation of the 1995 collective bargaining agreement, the Company representatives present believed that the Motor Carrier exemption of the [FLSA] preempted state law and that the employees other than vault personnel were exempt

from any overtime pay requirements. At that time, this appeared to be the law in every state in which the Company operated its business facilities. As a result, the contracting parties agreed that the employees covered by the FLSA Motor Carrier exemption would be paid their regular hourly rate for overtime worked. . . .

Vaughan Decl. ¶ 3.