

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-1999

# Keeley v. Loomis Fargo & Co

Precedential or Non-Precedential:

Docket 98-6428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Keeley v. Loomis Fargo & Co" (1999). *1999 Decisions.* Paper 204.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/204

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 19, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-6428

JOHN KEELEY; TIMMIE ORANGE;
ARIEL KILPATRICK; CHARLES WERDANN,
on behalf of themselves and all others similarly situated,
Appellants

v.

LOOMIS FARGO & CO.

On Appeal From the United States District Court
for the District of New Jersey
(D.C. Civ. No. 97-cv-06207)
District Judge: Honorable Dickinson R. Debevoise

Argued: May 18, 1999

Before: BECKER, Chief Judge, RENDELL and ROSENN
Circuit Judges.

(Filed July 19, 1999)

       PAUL SCHACHTER, ESQUIRE
        (ARGUED)
       MARY P. GALLAGHER, ESQUIRE
       Reinhardt & Schachter, P.C.
       744 Broad Street, Suite 2500
       Newark, NJ 07102

       Counsel for Appellants

DAVID M. VAUGHAN, ESQUIRE
  (ARGUED)
Elarbee, Thompson & Trapnell, LLP
800 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303

PATRICIA L. HARDAWAY, ESQUIRE
Gay & Hardaway
One Gateway Center
Newark, NJ 07102

Counsel for Appellee

DONALD M. PALOMBI, ESQUIRE
Office of Attorney General of
 New Jersey
Department of Law & Public Safety
Room CN112
25 Market Street
Trenton, NJ 08625

Counsel for Amicus Curiae
Attorney General of New Jersey

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal in a diversity case arises from an overtime pay dispute between a private employer and a number of its employees. Its resolution turns primarily upon a determination whether the New Jersey Commissioner of Labor exceeded his authority when he promulgated a regulation that excluded certain trucking industry employees, including the plaintiffs here, from New Jersey's statutory overtime pay requirement. The principal aim of this regulation was to avoid job loss that might result if New Jersey trucking industry employers were required-- unlike their counterparts in neighboring states--to pay regular overtime wages to their employees. New Jersey's statutory overtime provision, applicable to most private-sector workers in the state, requires employers to pay

2

overtime at a rate of "1-1/2 times [each] employee's regular hourly wage." N.J. Stat. Ann. S 34:11-56a4. By contrast, the regulation at issue here requires only that trucking industry employers pay their employees "an overtime rate not less than one and one-half times the [state] minimum wage." N.J. Admin. Code S 12:56-19.3. Because most trucking industry employees, including the plaintiffs here (with one minor exception), earn wages exceeding "one and one-half times the [state] minimum wage," the regulation's purported requirement that employers pay an overtime premium is rendered superfluous.

Our reading of New Jersey's Wage and Hour Law, and of New Jersey precedent in this area and in the administrative law field, leads us to the conclusion that the Commissioner exceeded his authority in enacting this regulation. The text of the statute plainly limits the Commissioner to promulgating wage orders only in those cases in which "a substantial number of employees in any occupation or occupations are receiving less than a fair wage." N.J. Stat. Ann. S 34:11-56a8 (emphasis added). The Commissioner made no such finding in this case, and in fact, implicitly justified adoption of the challenged regulation on the opposite ground, i.e., that the covered employees' wages were too high, thereby threatening New Jersey's trucking industry. Additionally, New Jersey's legislature has explicitly declared the policy of the Wage and Hour Law to be protecting employees from unfair wages and excessive hours, and the state's courts have repeatedly affirmed the protective nature of the statute. The trucking industry regulation issued by the Commissioner contravenes not only the plain language of the statute, but also this clearly expressed policy.

Finally, New Jersey precedent in both the Wage and Hour Law context and in the broader field of administrative law supports our conclusion that the Commissioner's promulgation of the challenged regulation exceeded his authority. Because we find that the Commissioner exceeded his authority in promulgating this regulation, we hold that the defendant Loomis Fargo may not assert the regulation as a defense to plaintiffs' claims for unpaid overtime wages.

3

We also conclude that the New Jersey good-faith defense for failure to pay overtime wages may apply to the period at issue here. The New Jersey good-faith defense requires both that the employer acted in good faith and that it relied on a written regulation, administrative practice, or enforcement policy of the relevant state agency. For the period prior to the enactment of the challenged regulation, there is no evidence in this record that the defendant relied on one of the enumerated sources in failing to pay the statutorily required overtime. We will therefore remand to the District Court for a determination whether the employer acted on the basis of an administrative practice or enforcement policy prior to the regulation's enactment. Because the New Jersey statute requires that the employer's good faith be based on an action or policy of a state agency, the employer may not rely on remand, as it did originally, on such sources as industry practice or union acquiescence to meet its burden to prove the good-faith defense for the pre-regulation period.

After the regulation was enacted, the employer would seem to have relied on that regulation to justify its failure to pay the statutory overtime rate. However, the record is silent on the basis for the employer's refusal to pay the statutory rate, and the District Court did not reach the issue whether the defendant acted with the requisite good faith in not paying the statutory rate. There may conceivably be some other explanation for the refusal other than good-faith reliance on the regulation, and hence we will leave for the District Court to determine in the first instance, following remand, whether the employer acted with good faith after the Commissioner of Labor promulgated the regulation at issue.

I. Procedural History

Since 1966, New Jersey's Wage and Hour Law, N.J. Stat. Ann. SS 34:11-56a to -56a30, has required most employers in the state to pay employees 1-1/2 times their regular hourly wage rate for work in excess of forty hours per week.1

_____

1. The Fair Labor Standards Act ("FLSA") similarly requires the payment of time-and-a-half for overtime work. See 29 U.S.C. S 207(a)(1) (1994).

4

Plaintiffs are four current or former employees of defendant Loomis Fargo (the successor to Wells Fargo Armored Service Corp.), which, for all relevant time periods, has failed to pay plaintiffs overtime pay according to the Wage and Hour Law. On November 13, 1997, plaintiffs filed a putative class action in New Jersey state court on behalf of themselves and similarly situated Loomis Fargo employees, seeking damages and equitable relief for Loomis Fargo's failure to pay overtime.2 Loomis Fargo, a non New Jersey citizen, removed the case to federal court.

Initially, Loomis Fargo moved to have the case dismissed on preemption grounds, arguing that the FLSA and the Federal Motor Carrier Act preempted New Jersey's minimum wage and overtime law. The District Court denied this motion. See Keeley v. Loomis Fargo & Co., 11 F. Supp. 2d 517, 521 (D.N.J. 1998). Less than a month later, the Magistrate Judge assigned to the case ordered the parties to file cross-motions for summary judgment on the basis of another defense put forth by Loomis Fargo, i.e., that its employees were exempted from the overtime law's requirements by a regulation promulgated by the New Jersey Commissioner of Labor in 1996. See J.A. at 51. The plaintiffs contended that the regulation exempting them from the overtime provision's coverage was invalid, as the Commissioner had no authority to enact it, and that they were therefore entitled to 1-1/2 times their regular hourly wages for any overtime work. The District Court held that the regulation was valid, and that for the period prior to the effective date of the regulation the defendant had acted with a good-faith belief that it need not pay overtime, thereby absolving it of any liability. See Keeley v. Loomis Fargo & Co., 42 F. Supp. 2d 442, 451-52 (D.N.J. 1998).

_____

However, there is no dispute that the plaintiffs are exempted from the overtime requirements of the FLSA, see id. S 213(b)(1) (1994 & Supp. II 1996), and we therefore confine our discussion to the New Jersey overtime law.

2. As the New Jersey Wage and Hour Law has a two-year statute of limitations, see N.J. Stat. Ann. S 34:11-56a25.1 (1988), plaintiffs' claims
for past unpaid wages are limited to the period beginning November 13, 1995.

The District Court had jurisdiction over this diversity case under 28 U.S.C. S 1332, while we have jurisdiction to hear the appeal of the District Court's final order granting summary judgment to defendant under 28 U.S.C. S 1291. Our review of the District Court's order is plenary. We must apply the same standard that the District Court was required to apply, "construing all evidence and resolving all doubts raised by affidavits, depositions, answers to interrogatories, and admissions on file in favor of the non-moving party." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998). However, in resolving the primary disputed issue in this case--the validity of the state regulation excluding plaintiffs from the overtime law's coverage--we are faced with a purely legal issue. To the extent that factual issues remain regarding Loomis Fargo's good-faith defense, we will remand for the District Court's determination of these issues in the first instance.

II. New Jersey Minimum Wage and Overtime Provisions

A. Statutory Provisions

New Jersey's overtime pay statute provides, in relevant part:

> Every employer shall pay to each of his employees wages at a rate . . . 1-1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week, except this overtime rate shall not include any individual employed in a bona fide executive, administrative, or professional capacity or, if an applicable wage order has been issued by the commissioner under [S 34:11-56a16], not less than the wages prescribed in said order. . . .

> The provisions of this section for the payment to an employee of not less than 1-1/2 times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week shall not apply to employees engaged to labor on a farm or employed in a hotel or to an employee of a common carrier of passengers by motor bus or to a limousine driver who is an employee of an employer engaged in the business

6

> of operating limousines or to employees engaged in labor relative to the raising or care of livestock.

N.J. Stat. Ann. S 34:11-56a4 (1988 & Supp. 1999).

The New Jersey legislature, in establishing this overtime pay requirement--and the related minimum-wage requirement--explicitly outlined the policy behind its enactment: "[T]o safeguard [workers'] health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being." Id. S 34:11-56a (1988).

Another provision of the law provides for appointment of wage boards by the Commissioner of Labor, which boards may recommend to the Commissioner the adoption of regulations governing minimum wages and overtime. The key provision provides, in full:

> If the commissioner is of the opinion that a substantial number of employees in any occupation or occupations are receiving less than a fair wage, he shall appoint a wage board as provided in [S 34:11-56a9] to report upon the establishment of minimum fair wage rates for employees in such occupation or occupations.

Id. S 34:11-56a8. Section 34:11-56a9 outlines the procedure by which wage board members are appointed and establishes the number and nature (i.e., employer representatives, employee representatives, etc.) of such members. Upon a majority vote of a wage board's members, the board may "recommend minimum fair wage rates" and the "establishment or modification of the number of hours per week after which the overtime rate established in [S 34:11-56a4] shall apply and . . . the establishment or modification of said overtime rate." Id. S 34:11-56a13.

Following issuance of a wage board's report to the Commissioner, notice and a public hearing must be held. See id. S 34:11-56a15. Within ten days after the hearing, the Commissioner must either approve or disapprove the report:

7

> If the report is approved, the commissioner shall make a wage order which shall define minimum fair wage rates in the occupation or occupations as recommended in the report of the wage board and which shall include such proposed administrative regulations as the commissioner may deem appropriate to supplement the report of the wage board and to safeguard the minimum fair wage standards established. Such administrative regulations may include among other things, . . . overtime or part-time rates . . . .

Id. S 34:11-56a16. In 1972, a provision was added to the Wage and Hour Law that provides, in full, that "[t]he provisions of this act shall be applicable to wages covered by wage orders issued pursuant to [S 34:11-56a16]." Id. S 34:11-56a4.2.

B. The Regulations

Pursuant to the foregoing statutory provisions, the Commissioner has promulgated regulations that govern wages and hours for workers in a number of occupations. The regulation at issue in this case provides:

> Every trucking industry employer shall pay to all drivers, helpers, loaders and mechanics for whom the Secretary of Transportation may prescribe maximum hours of work for the safe operation of vehicles pursuant to 49 U.S.C. S 31502(b) an overtime rate not less than one and one-half times the minimum wage required pursuant to N.J.S.A. 34:11-56a4 and N.J.A.C. 12:56-3.1.

N.J. Admin. Code S 12:56-19.3 (1998). This regulation was proposed by the Commissioner on March 18, 1996, and adopted on July 15, 1996, with an effective date of August 5, 1996. Defendant Loomis Fargo is a "trucking industry employer," and the plaintiffs are all "drivers, helpers, loaders [or] mechanics" covered by the reference to 49 U.S.C. S 31502(b). Therefore, there is no question that the regulation applies to the present dispute and that, if it is valid, it justifies defendant's payment of overtime wages

8

that are less than the statutory minimum, but that are consistent with the regulation.

The commissioner has promulgated a number of other regulations that govern various categories of employees and employers. For example, one regulation exempts six categories of workers from the minimum wage laws. 3 See N.J. Admin. Code S 12:56-3.2 (1995). However, each of these categories is already specifically exempted under the statutory minimum wage provision. See N.J. Stat. Ann. SS 34:11-56a4, -56a4.1. Other regulations in fact extend the statutory overtime provisions, with certain modifications, to employees who are otherwise exempted (by explicit legislative mandate) from the statute's coverage. See N.J. Admin. Code SS 12:56-11.3, -13.3. Additional regulations, covering food service employees, air carrier employees, and skilled mechanics, provide that these employees must be paid overtime (as defined in the statute), with certain adjustments relevant to their industries.4

None of the foregoing regulations exempt employees from the statute's overtime or minimum wage provisions when such an exemption does not appear in the statute itself. In fact, from the parties' submissions and our own research, it appears that the only categories of employees exempted from the law's overtime requirements by regulation, but not

_____

3. The exempted categories include certain full-time college students, outside sales persons, motor vehicle sales persons, part-time home-based childcare workers, certain minors, and employees at "summer camps, conferences and retreats operated by any nonprofit or religious corporation or association during the months of June, July, August and September."

4. See N.J. Admin. Code S 12:56-14.3(a)(3) (1995) (providing, in the case of food industry employees, that "[f]ood and lodging supplied to employees shall not be included in wages for those hours worked in excess of 40 hours per week"); id. S 12:56-15.3(a) (allowing the use of compensatory time off instead of overtime pay for air carrier employees, in certain circumstances); id. S 12:56-20.3(a) (1998) (providing that skilled mechanics employed by auto dealers are exempt from the overtime provisions only if they are paid on a flat or incentive-rate basis
and are "guaranteed a basic contractual hourly rate [that] . . . must include payment of time and one-half of the hourly rate for all hours actually worked in excess of 40 hours per week").

9

also exempted by statute, are seasonal amusement employees and trucking industry employees. The defendant additionally cites the skilled mechanic regulation as evidence that the Commissioner has the authority to exempt groups of employees not explicitly exempted by the statute. See Appellee's Br. at 14 & n.10. However, it fails to note that the skilled mechanic regulation effectively requires that these employees be paid at the statutory overtime rate. See N.J. Admin. Code S 12:56-20.3(a) (1998) (providing that skilled mechanics are "guaranteed a basic contractual hourly rate [that] . . . must include payment of time and one-half of the hourly rate for all hours actually worked in excess of 40 hours per week").

Seasonal amusement employees are exempted from the overtime provisions (but not the minimum wage provisions) altogether. See id. S 12:56-12.3 (1995).5 Trucking industry employees--the group at issue in this case--are partially exempted, in that they are entitled to overtime pay of at least 1-1/2 times the minimum wage, rather than 1-1/2 times their own hourly wage rate. See id.S 12:56-19.3 (1998). As noted above, however, because most trucking industry employees receive regular wages that exceed 1-1/2 times the state minimum wage, the trucking industry regulation effectively exempts these employees from any overtime requirement and prevents them from receiving an overtime premium.

III. Validity of the Trucking Industry Regulation

If the regulation at issue here is valid, it would provide a complete defense to defendant's failure to pay overtime to its employees for the period following its effective date of August 5, 1996. (We discuss below defendant's possible good-faith defense for its failure to pay overtime before-- and after--the regulation's enactment.) Therefore, our primary task is to determine whether the trucking industry

_____

5. The issue whether the seasonal amusement employee regulation is valid is not before us. We therefore draw no inference from the Commissioner's promulgation of this regulation exempting apparently otherwise-covered employees from the statutory overtime provision.

10

regulation was validly promulgated by the Commissioner under the terms of the New Jersey Wage and Hour Law.

A. New Jersey Case Law

Decisions of New Jersey's courts involving both the Wage and Hour Law and other administrative regimes are instructive in our determination whether the Commissioner exceeded his authority in the present case. In the wage law context, the Appellate Division of the New Jersey Superior Court held in a pre-1966 case that the Commissioner of Labor exceeded his authority in issuing a wage order setting minimum wages for certain hotel employees, when the statute at that time explicitly excluded hotel employees from its coverage. See Hotel Suburban Sys., Inc. v. Holderman, 125 A.2d 908, 912 (N.J. Super. Ct. App. Div. 1956). Unlike the current Wage and Hour Law, the pre-1966 statute did not establish minimum wages or maximum hours, but conferred authority on the Commissioner to promulgate wage and hour requirements on an industry-by-industry basis, through the issuing of wage orders. However, the statute explicitly excluded certain occupations from the Commissioner's authority.

In Hotel Suburban, the court noted that the Commissioner's exercise of his authority "is of necessity restrained by the declared policy and spirit of the statute and the criteria and standards therein laid down," and "the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or . . . . deviate from the principle and policy of the statute." Id. at 911 (quoting Abelson's Inc. v. New Jersey State Bd. of Optometrists, 75 A.2d 867, 872 (N.J. 1950)). Further, the court stated that the Commissioner could make regulations "consistent with, but limited by, the provisions of the statute," and when the statute was "clear and unambiguous," the Commissioner could not amend, alter, enlarge, or limit "the terms of the legislative enactment." Id. The court concluded by noting that, even conceding the validity of the Commissioner's policy arguments for including the relevant employees under the minimum wage act, "the authority to classify and exempt lies with the Legislature; it is not an administrative or judicial function."

11

Id. at 913-14; see also Silverman v. Berkson , 661 A.2d 1266, 1268 (N.J. 1995) ("The first question in this case is one of agency authority. Government agencies have only those powers the Legislature confers on them.").

Following passage of the 1966 Act, the Appellate Division held that the Commissioner could issue a wage order for occupations excepted from the statute's new minimum wage provisions:

> Under N.J.S.A. 34:11-56a13 the wage board may recommend the "establishment" of an overtime rate in the particular occupation for which the wage board was appointed. Since overtime is provided for under N.J.S.A. 34:11-56a4 as to all occupations, save those specifically excepted, manifestly a wage board recommendation for the "establishment" of an overtime rate would have to be in one of the occupations excepted from the overtime provisions of N.J.S.A. 34:11-56a4.

New Jersey State Hotel-Motel Ass'n v. Male, 251 A.2d 466, 467 (N.J. Super. Ct. App. Div. 1969).

New Jersey courts have also frequently discussed the scope of administrative agencies' authority in contexts other than the Wage and Hour Law. In Medical Society v. New Jersey Department of Law & Public Safety, 575 A.2d 1348 (N.J. 1990), plaintiffs challenged a regulation promulgated by the State Board of Physical Therapy. Before evaluating that challenge, the state supreme court explained its scope of review:

> An agency rule or regulation is presumptively valid, and anyone challenging such a rule or regulation has the burden of proving its invalidity. This presumption of validity attaches if the regulation is within the authority delegated to the agency and is not on its face beyond the agency's power. An administrative regulation, however, cannot alter the terms of a statute or frustrate the legislative policy. This Court, nonetheless, "places great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted."

12

Id. at 1352 (citations omitted).

The court noted that its "task is to discern the extent to which the Legislature has delegated authority" to the administrative agency, looking "initially [at] the terms of the Act." Id. Further, the court held that, in discerning legislative intent, it "should try to give effect to every word of the statute, and should not assume that the Legislature used meaningless language." Id. at 1353. The court also looked to legislative history, particularly differences between the current statute and its predecessor. See id. at 1353-54. In the end, it found the regulation at issue valid. See id. at 1355.

The Appellate Division has also emphasized the relevance of a statute's underlying policy, particularly one declared explicitly by the legislature:

> In deciding whether a particular regulation is statutorily authorized, a court "may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." . .. Furthermore, declarations of public policy in enabling legislation can serve as sources of statutory authorization for regulations aimed at pursuing that policy.

E.I. du Pont de Nemours & Co. v. New Jersey Dep't of Envtl. Protection & Energy, 661 A.2d 1314, 1319 (N.J. Super. Ct. App. Div. 1995) (quoting New Jersey Guild of Hearing Aid Dispensers v. Long, 384 A.2d 795, 804 (N.J. 1978)).

Finally, the New Jersey Supreme Court recently reiterated that an agency regulation must be "within the fair contemplation of the delegation of the enabling statute." New Jersey State League of Municipalities v. Department of Community Affairs, 729 A.2d 21, 27 (N.J. 1999) (internal quotation omitted) ["State League"]. The court went on to note, as it did in Medical Society, that a determination whether the regulation is within the agency's delegated authority must begin with " `the statute's plain meaning,' " followed, if necessary, by analysis of "the legislative intent underlying the statute." State League, 729 A.2d at 28 (citation omitted).

13

In sum, as the excerpt above from Medical Society makes clear, an administrative regulation "cannot alter the terms of a statute or frustrate the legislative policy." 575 A.2d at 1352. In evaluating the regulation affecting trucking industry employees, we must look at whether it is consistent with the terms of the Wage and Hour Law, and compare the regulation to the legislative policy behind the law. We add only that New Jersey's law in this area is entirely mainstream, reflecting fundamental principles of statutory construction and administrative law.

B. The Trucking Industry Regulation

1. Text of the Statute

New Jersey's Wage and Hour Law provides: "Every employer shall pay to each of his employees" the overtime rate of 1-1/2 times the employee's own wage rate. N.J. Stat. Ann. S 34:11-56a4 (emphasis added). The plain meaning of "every employer" would appear to include trucking industry employers. See State v. Kennedy, 705 A.2d 757, 760 (N.J. 1998) (finding that the "plain meaning" of a statute requiring restitution by "every person who violates this section" was that every person who violates that law, including one who pleads guilty, must pay restitution).

Two groups are explicitly exempted from the requirement that "every employer" pay the statutory overtime rate. First, certain types of workers (executive, administrative, and professional) are excluded from the overtime provisions. Second, employees in certain industries are exempted (farm workers, hotel employees, etc.). Under the well-established principle of statutory construction, expressio unius est exclusio alterius, the legislature's explicit expression of one thing--here, certain exceptions to the overtime requirement --indicates its intention to exclude other exceptions from the broad coverage of the overtime requirement. See Township of Pennsauken v. Schad, 704 A.2d 1337, 1339 (N.J. Super. Ct. App. Div.) (invoking expressio unius maxim to interpret coverage of a zoning ordinance), cert. granted, 718 A.2d 1210 (N.J. 1998), and cert. granted, 718 A.2d 1211 (N.J. 1998). We note that the expressed exceptions in

14

the statute plainly do not include the one at issue here, the trucking industry, evincing the legislature's intent to include this industry within the statute's overtime coverage. While the expressio unius maxim "can never override clear and contrary evidences of [legislative] intent," Abdullah v. American Airlines, Inc., Nos. 98-7055, -7056, 1999 WL 415525, at *10 (3d Cir. June 23, 1999) (internal quotation omitted), the inference we draw from the maxim in this case is entirely consistent with the legislature's intent that we discern from a plain reading of the statutory text and the manifest policy behind the Wage and Hour Law.

In addition to the explicit exceptions in the law--which do not include trucking industry employees--the legislature has delegated authority to the Commissioner to constitute wage boards and to adopt such boards' recommendations regarding wages and overtime. Once again, however, our examination of the plain language of the statutory provision conferring this authority militates against the conclusion that the Commissioner may exempt entire groups of employees (or employers) from the statutory overtime requirements.6 The relevant provision grants the Commissioner authority to commence the wage order process by appointing a wage board (only) "[i]f the commissioner is of the opinion that a substantial number of employees in any occupation or occupations are receiving less than a fair wage." N.J. Stat. Ann.S 34:11-56a8 (emphasis added); see also id. S 34:11-56a7 ("The commissioner shall have the power, on his own motion, and it shall be his duty upon the petition of 50 or more

_____

6. While the regulation at issue here requires trucking industry employers to pay at least 1-1/2 times the statutory minimum wage to their employees (rather than 1-1/2 times the employees' own wage rates) for overtime hours, the record discloses that virtually all trucking industry employees have wage rates that exceed 1-1/2 times the statutory minimum wage. The overtime requirement in the trucking industry regulation is thus not a mere modification of the statutory overtime rate, but is largely a nullification of that statutory requirement.
It is for this reason that we speak in terms of trucking industry employers being "exempted" or "excluded" from the overtime requirements by the regulation, as their employees are, in practical terms, paid the same wage rate for their overtime hours as they are for their regular hours of work.

15

residents of the State, to cause the director to investigate any occupation to ascertain whether a substantial number of employees are receiving less than a fair wage.").

Section 34:11-56a8 is the only provision cited by the defendant, and the only one we believe exists, that grants the Commissioner the authority to appoint a wage board, which is a necessary prerequisite to the issuing of a wage order. See id. S 34:11-56a16. In this case, the Commissioner noted that the wage board was appointed because of uncertainty regarding whether trucking industry employees were covered by the overtime provision and in order to ensure that New Jersey trucking companies remained competitive with out-of-state companies that were not covered by their own states' overtime requirements. See 28 N.J. Reg. 3798, 3799 (1996). The plain language of section 34:11-56a8, however, limits the Commissioner's authority to appointing a wage board when, despite the general protections of the wage and overtime law, a substantial number of employees in an industry are underpaid, a condition that concededly is not present here.[7]

In short, we find that the text of the New Jersey Wage and Hour Law plainly covers "every employer" except those explicitly exempted by the legislature. Further, the Commissioner's authority to appoint wage boards, whose reports might lead to the adoption of wage orders, is clearly limited to those situations in which employees in the relevant industry are being underpaid.

Before turning to an analysis of the policy underlying the statute, we note that section 34:11-56a4.2 was added to

_____

7. In its appellate brief, the defendant appears to admit as much: "Thus, if there is a question as to whether a substantial number of employees in a particular occupation are receiving less than a fair wage, the Commissioner is empowered in several ways (and indeed, it may well be his duty) to investigate the question." Appellee's Br. at 15 n.12 (emphasis added). While we believe this is an accurate statement of the Commissioner's authority under the law, as explained in the text, we reject defendant's argument that once a wage board is validly appointed because of evidence that employees are being paid less than a fair wage, the wage board can recommend that wages for these employees be lowered.

16

the statute in 1972, providing plainly and without exception that "[t]he provisions of [the Wage and Hour Law] shall be applicable to wages covered by wage orders." N.J. Stat. Ann. S 34:11-56a4.2. This clear and unequivocal statutory command would be overridden if the Commissioner could issue a wage order, such as the one challenged here, that was inconsistent with a provision of the act, such as the minimum wage or overtime provisions. If the statutory overtime provision is applicable to the trucking industry wage order, which would appear to be compelled by section 34:11-56a4.2, that wage order cannot reduce the overtime pay requirements to less than 1-1/2 times a worker's regular hourly wage.

2. Policy of the Statute

As noted above, New Jersey courts have held that the Commissioner's authority to promulgate wage orders "is of necessity restrained by the declared policy and spirit of the statute," and "the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or . . . . deviate from the principle and policy of the statute." Hotel Suburban, 125 A.2d at 911 (internal quotation omitted). Further, "[a]n administrative regulation . . . [cannot] frustrate the legislative policy." Medical Society, 575 A.2d at 1352. Therefore, we must examine the wage order and the justification given by the Commissioner for its promulgation to determine whether the order is consistent with the declared policy of the Wage and Hour Law.

The primary rationale asserted by the Commissioner for establishing a wage board to examine the trucking industry and for adopting the board's recommendation was that "the application of the [statutory] overtime provision could result in the flight of business with the resulting reduction in employment in this industry." 28 N.J. Reg. at 3799. By contrast, the declared policy of the Wage and Hour Law is "to safeguard [workers'] health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being." N.J. Stat. Ann. S 34:11 56a. In a number of cases,

17

New Jersey courts have noted that the Wage and Hour Law "is social legislation designed to correct abuses in employment," Male, 251 A.2d at 467, and that "[t]he humanitarian and remedial nature of this legislation requires that any exemption therefrom be narrowly construed." Yellow Cab Co. v. State, 312 A.2d 870, 873 (N.J. Super. Ct. App. Div. 1973).

We think it beyond dispute that a policy of protecting local trucking businesses from competition (even if this will redound to the benefit of these businesses' employees) is fundamentally different from the stated legislative policy of protecting workers from unfair wage levels "detrimental to their health, efficiency and well-being." When the declared policy behind a statute is to protect workers from abusive practices regarding low wages and excessive hours, a regulation excluding a group of workers from this protective legislation's coverage, under the guise of keeping a local industry competitive, "frustrate[s] the legislative policy," Medical Society, 575 A.2d at 1352, and usurps "the authority to classify and exempt[, which] lies with the Legislature," Hotel Suburban, 125 A.2d at 914.

While we believe that the plain language of the statute and its clearly stated policy inexorably lead to the conclusion that the Commissioner does not have the authority to exempt a group of employees, not otherwise exempted by the statute, from the law's minimum wage or overtime requirements, we also find support for our conclusion in the major changes made to the law in 1966. As noted above, under the pre-1966 law, no minimum wages or overtime pay requirements existed in the statute itself, while the Commissioner was explicitly authorized to promulgate such protective devices for certain groups of workers. In 1966, the law was fundamentally changed, and minimum wage and overtime pay requirements were established for all workers (with certain enumerated exceptions) in the statute. Under the new law, the Commissioner's authority changed substantially, from promulgating wage orders for any group of workers not explicitly excluded from that authority, cf. Hotel Suburban, 125 A.2d at 912, to issuing wage orders that bring excluded employees under the law's coverage, cf. Male, 251 A.2d at

18

467. There is, however, no indication that the legislature intended, in making this change, to confer on the Commissioner an entirely different authority to exempt employees who would otherwise be included within the new statute's broad coverage.8

3. Summary

In sum, we find that the plain language of the New Jersey Wage and Hour Law requires, with certain enumerated exceptions, that "every employer" in the state pay its employees overtime wages at a rate of 1-1/2 times each employee's regular wage rate. We also find that the plain language of the section granting the Commissioner of Labor authority to form a wage board and to subsequently issue a wage order confers such authority only when the Commissioner finds that "a substantial number of employees in any occupation or occupations are receiving less than a fair wage," something that the Commissioner unquestionably did not find in the present case. Finally, the policy of the Wage and Hour Law, declared by New Jersey's legislature and reiterated by the state's courts, supports our reading of the statute's text and our conclusion that the Commissioner may not exempt a category of employees from the statute's coverage when the legislature has not done so itself or expressly authorized the Commissioner to do so. This is clearly not a case in which the plain reading of a statute conflicts with its underlying rationale. Cf. State League, 729 A.2d at 29 (rejecting a literal reading of a statute that "would render the Act virtually meaningless").

_____

8. In a similar vein, the defendant refers us to other states in which wage orders have been issued by administrative agencies exempting truck drivers from overtime requirements, as support for its argument that the New Jersey Commissioner had authority to do so as well. In these states, however, the statutory provisions are more like the pre-1966 law in New Jersey in that no general wage or hour requirements exist in the statutes and broad discretion is vested in the administrative agencies to promulgate rules or regulations regarding wages and hours. See, e.g., N.D. Cent. Code S 34-06-03 (1997) ("The commissioner . . . may ascertain and prescribe: 1. Standards of hours of employment for employees and what are unreasonably long hours . . .[and] 3. Standards of minimum wages for employees in any occupation in this state.").

We therefore conclude that the Commissioner had no authority to promulgate the regulation challenged by plaintiffs, and hence defendant may not rely on the regulation as a defense to plaintiffs' claims for unpaid overtime wages that they are due under New Jersey's Wage and Hour Law. We will accordingly reverse the District Court's judgment in favor of defendant Loomis Fargo for the period following the regulation's promulgation.

IV. The Good-Faith Defense

Although we conclude that defendant may not rely on the trucking industry regulation to defend against plaintiffs' claims for unpaid overtime wages, New Jersey's Wage and Hour Law contains a good-faith defense that may apply to this case. Because the District Court held that the regulation was valid, it did not reach the issue of defendant's good-faith defense after the regulation became effective. However, it found that the good-faith defense did apply to the period before the regulation's adoption. We will remand for the District Court to revisit both of these issues because, as we discuss below, we seriously question whether defendant meets the requirements for the good-faith defense prior to the regulation's adoption, and we believe the District Court should have the opportunity in the first instance to analyze the good-faith defense's applicability after enactment of the regulation.

A. New Jersey's Good-Faith Defense

1. The Statutory Provision

The statutory provision that permits a good-faith defense to a violation of the overtime statute provides as follows:

> [N]o employer shall be subject to any liability or punishment for or on account of . . . the failure of the employer to pay minimum wages or overtime compensation under this act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or

20

> interpretation by the Commissioner of the Department
> of Labor and Industry or the Director of the Wage and
> Hour Bureau, or any administrative practice or
> enforcement policy of such department or bureau with
> respect to the class of employers to which he belonged.
> Such a defense, if established, shall be a complete bar
> to the action or proceeding, notwithstanding, that after
> such act or omission, such administrative regulation,
> [etc.] . . . is modified or rescinded or is determined by
> judicial authority to be invalid or of no legal effect.

N.J. Stat. Ann. S 34:11-56a25.2 (1988).

The case law on New Jersey's good-faith defense is sparse. The one case relied on by the District Court, a Law Division case, appeared to ignore the requirement that good faith be based on a written regulation, order, etc., and found that the defendant's reliance on unrelated statutes and industry practice constituted good faith. See State v. Frech Funeral Home, 448 A.2d 1037, 1041-43 (N.J. Super. Ct. Law Div. 1982).9

2. Analogous Federal Statutes

The federal wage and overtime statutes also include a good-faith defense, and we believe that our precedents interpreting the federal good-faith law are helpful in our task of interpreting the state provision. The federal law includes two good-faith provisions.10 One of these is

_____

9. The District Court inadvertently cited Frech as a New Jersey Supreme Court case. See Keeley, 42 F. Supp. 2d at 452. Were Frech actually a state supreme court case, we would obviously adhere to its interpretation of the state good-faith defense, even though the court appeared to ignore a requirement of that defense. However, as Frech is actually a trial court decision, it is at most persuasive but nonbinding authority and we look to the plain language of the statute and our own interpretation of the good-faith defense in predicting how the state supreme court would apply the defense to the facts of this case.

10. The two good-faith defenses offer different protections. The first, 29 U.S.C. S 259, provides a complete defense to an action for unpaid wages, while the second, id. S 260, gives a court discretion to award less than the statutory amount of liquidated damages, but still requires the defendant to pay compensatory damages for unpaid wages.

21

identical in all material respects to the New Jersey good-faith statute. See 29 U.S.C. S 259(a) (1994); cf. Dole v. Odd Fellows Home Endowment Bd., 912 F.2d 689, 696 (4th Cir. 1990) (noting that the good-faith defense in S 259 requires a "written regulation, order, ruling, approval, or interpretation that could have been relied on"). The second federal provision is less strict,11 requiring only that "the employer [show] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. S 260 (1994).

While S 260 requires simply good faith and"reasonable grounds," as opposed to the New Jersey law's requirement of reliance on an administrative regulation, order, practice, or policy, cases involving S 260 are still informative for their interpretation of the "good faith" requirement. For example, in Williams v. Tri-County Growers, Inc., this court held:

> The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute. . . . [T]he employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements.

747 F.2d 121, 129 (3d Cir. 1984). Under Williams, Loomis Fargo's longstanding practice of not paying overtime and its union's apparent acquiescence in this practice are insufficient to establish good faith--even leaving aside the existence (or lack thereof) of a regulation, order, practice, or policy on which defendant relied.

More recently, we discussed the good-faith defense in S 260 in Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991). In Martin, we held that the district court erred in finding that the employer had proved the good-faith defense, citing three factors in particular. First,

_____

11. Cf. 29 C.F.R. S 790.17(i) n.110 (1998) (noting that the fact that an employer has no defense under S 259 would not preclude a court from finding that the employer had met the requirements for the defense in S 260).

22

reiterating the holding in Williams, we held that the employer's "failure to inquire into the Act's overtime pay requirements before [the agency's investigation] precludes a determination that the company's subjective good faith was reasonable." Id. at 909. Second, we held that "the employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation." Id. at 910. Finally, we rejected the district court's contention that an employer could violate overtime requirements as a " `reasonable and necessary' competitive response[ ] to the `market for qualified employees.' " Id. (quoting district court). We noted that "[t]his reasoning tends improperly to favor companies in industries where economic conditions make violations of the Act most attractive or pervasive." Id.

Williams and Martin, therefore, provide that reasonable good faith is not shown when an employer does not inquire about the law's requirements, simply follows an industry trend of not complying with the law, or violates the law in order to remain competitive. Although we will not assume that New Jersey's courts would adopt this federal jurisprudence unaltered, we note again that these cases involved the federal good-faith defense with the lower standard, while the language of the New Jersey statute is virtually identical to that of the stricter of the two federal good-faith provisions. The federal jurisprudence also seems eminently sensible. Therefore, these cases likely present the minimum standard that a New Jersey employer must meet in order to enjoy the protections of that state's good-faith defense to a failure to pay overtime.

3. Federal Regulations

Although federal wage and hour regulations obviously do not apply to New Jersey's wage law, such regulations contain explanations of each term in S 259 (each of which terms also appears in the New Jersey good-faith provision), and may be helpful in interpreting the New Jersey good-faith defense. The regulations note that "the employer's `good faith' is not to be determined merely from the actual state of his mind." 29 C.F.R. S 790.15(a) (1998). Rather,

" `good faith' also depends upon an objective test--whether the employer . . . acted as a reasonably prudent man would have acted under the same or similar circumstances." Id.

The regulations also state, as we did in Williams and Martin, that an employer has an affirmative duty to inquire about uncertain coverage issues, such as might arise if conflicting court decisions exist. See id. S 790.15(b); id. S 790.15(d) n.99 ("It is not intended that this defense shall apply where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him." (quoting 93 Cong. Rec. 4390 (1947) (statement of Rep. Walter))). Such uncertainty appears to have existed here, before the state regulation was promulgated. See 28 N.J. Reg. at 3799 ("[R]ecent court cases have raised an issue as to whether overtime was required in New Jersey.").

Finally, the regulations make clear that an employer may not assert the good-faith defense on the basis of the relevant agency's non-action:

> A failure to act or a failure to reply to an inquiry on the part of an administrative agency is not a "regulation, order, ruling, approval, or interpretation" within the meaning of [S 259]. . . .
>
> . . . .
>
> . . . [While t]his should not be construed as meaning that an agency may not have administrative practices or policies to refrain from taking certain action as well as practices or policies contemplating positive acts of some kind . . . , there must be evidence of [the practice or policy's] adoption by the agency through some affirmative action establishing it as the practice or policy of the agency.

29 C.F.R. SS 790.17(f), 790.18(h).

In the absence of further guidance from the New Jersey courts, we believe that federal courts faced with a party asserting New Jersey's good-faith defense may consider the above explication of S 259, the requirements of which are, in all material respects, identical to those of the New Jersey statute. In particular, the District Court in this case could

24

properly consider on remand the above discussion of "good faith" and of S 259's "practice or policy" provision.

4. Summary

Although New Jersey caselaw is virtually nonexistent on the requirements of that state's good-faith defense to a failure to pay statutory overtime rates, we believe that the plain text of the good-faith provision, along with our own caselaw on the similar federal good-faith defenses and the detailed federal regulations interpreting those defenses, provide ample guidance in this area. First and foremost, New Jersey's good-faith defense is clearly unavailable when an employer is not relying on one of the enumerated sources in the statute, such as a regulation, practice, or policy of the state labor agency. Further, like the federal good-faith defenses, New Jersey's law requires good-faith reliance, and we have held that good faith is absent when the employer fails to investigate a law's requirements, or simply relies on a longstanding practice (of either the employer itself or its industry) of failing to pay overtime or on union acquiescence in such failure. We believe that, in the absence of further guidance from New Jersey's appellate courts, these standards should be used by federal courts evaluating an employer's good-faith claims under New Jersey law.

B. Defendant's Pre-Regulation Failure to Pay Overtime

In finding that defendant had adequately made out a good-faith defense for the period prior to enactment of the trucking industry regulation, the District Court pointed out that defendant's collective bargaining agreement with the relevant employees provided that, with certain exceptions not applicable here, "there will be no premium pay for hours worked over forty (40) in a workweek, and all such hours will be paid at the employee's straight-time rate." Keeley, 42 F. Supp. 2d at 452. Further, the court found that "there is no indication that any trucking industry employer in New Jersey has been required to pay its employees one and one-half times their regular hourly rate for overtime, either before or after the regulation was

25

issued." Id. Finally, the court relied on a declaration by defendant's counsel that, during contract negotiations, "the Company representatives present believed that the Motor Carrier exemption of the [FLSA] preempted state law and that the employees other than vault personnel were exempt from any overtime pay requirements." Id. at 452 n.10 (alteration in original).

For a number of reasons, we do not believe that these factors provide sufficient support for a finding that the defendant's failure to pay overtime prior to August 5, 1996, fell under the good-faith defense of the New Jersey statute. First and foremost, the statute clearly requires that the good-faith belief be based on either (1) a written regulation, order, ruling, approval or interpretation from one of the designated state authorities or (2) an "administrative practice or enforcement policy" of the relevant state agencies. Yet neither the factors cited by the District Court nor anything we can find in the record indicates that, prior to August 5, 1996, defendant relied on a written document, practice, or enforcement policy of the state labor department in not paying its employees time-and-a-half for overtime work.

Further, looking to Williams and Martin, and the federal regulations, as providing an interpretative source for the New Jersey statute, it is unclear what affirmative steps the defendant took to ascertain the overtime law's requirements before promulgation of the regulation. It apparently relied primarily on industry practice, but if this is insufficient for the lower standard in S 260, as Williams and Martin held, it would almost certainly be insufficient for the higher standard of S 259--and of New Jersey's good-faith defense.

Finally, we note that the good-faith defense was accepted by the District Court at the summary judgment stage, following minimal discovery. Further discovery may (or may not) reveal that the defendant knew that it was violating state law by not paying its employees overtime, but sought to avoid the consequences of its actions by inducing the union to agree to the overtime "waiver." Other ramifications of the good-faith defense could emerge in discovery that

26

create issues that need eventual resolution by afinder of fact.[12]

The defendant argues that plaintiffs may not now contend that discovery is needed on the good-faith defense, as they took the position before the District Court that further discovery was not necessary. See Appellee's Br. at 21 n.18. However, the plaintiffs reasonably believed that the District Court was ruling only on the validity of the trucking industry regulation, and not on defendant's good-faith defense, when they declined to request further discovery. See J.A. at 51 (Magis. Order of July 1, 1998) (ordering the "parties to cross-move for summary judgment on validity of N.J.A.C. 12:56-19.3"). We therefore will reverse the District Court's judgment in defendant's favor for the period before the regulation's enactment. We also leave it for the District Court on remand to determine what, if any, discovery is necessary and appropriate for adjudication of defendant's good-faith defense.

C. Defendant's Post-Regulation Failure to Pay Overtime

Because it found the regulation valid, the District Court did not reach the issue whether the company had demonstrated a good-faith defense for its post-regulation failure to pay overtime. See Keeley, 42 F. Supp. 2d at 451 n.9. It appears that, for its post-regulation conduct, the company was relying on a written regulation to justify its failure to pay overtime. However, the record is silent on this issue, and therefore we will leave it for the District Court on remand to determine whether defendant acted in good faith in not paying its employees overtime following promulgation of the regulation.

V. Conclusion

Defendant Loomis Fargo may not invoke the regulation governing trucking industry employees as a justification for its failure to pay overtime. We find that the Commissioner exceeded his authority in enacting this regulation. If the

_____

12. We note that the burden to plead and prove good faith is on the defendant.

27

defendant relied in good faith on this regulation in its failure to pay the statutory overtime rate, it may avoid liability for the period following the regulation's enactment (on August 5, 1996) under New Jersey's statutory good-faith defense. We leave this issue for the District Court to determine on remand. Finally, following any appropriate discovery, the District Court should also revisit on remand whether defendant was relying on an administrative regulation, order, practice, or policy in not paying overtime prior to August 5, 1996, as is required by New Jersey's good-faith defense.

For the foregoing reasons, the judgment of the District Court will be reversed, and the case remanded for further proceedings consistent with this opinion.13

_____

13. Plaintiffs belatedly argue on appeal that we should order the District Court to remand this case to state court under the doctrine known as Burford abstention. We believe that this argument has no merit. Burford abstention applies when a federal court is asked to enjoin a state administrative order that will injure the plaintiff (such as an order granting an oil drilling permit to a competitor or denying the plaintiff permission to discontinue an unprofitable line of business). As the Supreme Court has put it:

> Where timely and adequate state-court review is available, a federal
> court sitting in equity must decline to interfere with the proceedings
> or orders of state administrative agencies: (1) when there are
> "difficult questions of state law bearing on policy problems of
> substantial public import whose importance transcends the result in
> the case then at bar"; or (2) where the "exercise of federal review of
> the question in a case and in similar cases would be disruptive of
> state efforts to establish a coherent policy with respect to a matter
> of substantial public concern."

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) (citation omitted); see also Grode v. Mutual Fire, Marine & Inland Ins. Co., 8 F.3d 953, 956 (3d Cir. 1993).

The present case primarily involves a claim for damages, not equitable relief. Further, there are no "proceedings or orders of state administrative agencies" at issue here, only state regulations of general applicability. Cases implicating Burford abstention involve state orders against an individual party that a federal-court plaintiff seeks to enjoin.
Here, there is a state regulation that affects all trucking industry employers, not a specific administrative order aimed at one party.

Therefore, abstention under Burford is clearly inappropriate.

28

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

29